LORBACHER v. HOUSING AUTHORITY OF THE CITY OF RALEIGH

[127 N.C. App. 663 (1997)]

G.S. Materials had in effect contributed to the accident in question. The Gordons contend that G.S. Materials is independently negligent for paying Garner and other truckers in its employ by the ton for the sand that they hauled, as opposed to by the day, week or year that they worked. This method, they contend, encouraged Garner and other truckers to disobey highway safety rules and regulations for the sake of making more money. In asserting this contention, however, the Gordons brought forth no evidence tending to show that G.S. Materials was somehow negligent in paying its truckers by this method of compensation. The law in this State is that a plaintiff should not be allowed to get a particular issue to the jury in the absence of evidence, direct or circumstantial, that a defendant *actually was* negligent.[18] There being no evidence here of that nature, the issue of whether G.S. Materials' method of compensating its truckers was in fact the cause of the Gordons' injuries must be left in the realm of speculation and conjecture.

## CONCLUSION

We hold that the trial court properly granted summary judgment in favor of G.S. Materials and Aggregate Carriers on all of the Gordons' claims against them. Accordingly, the order below is,

Affirmed.

Judges GREENE and MARTIN, Mark D., concur.

---

RODNEY ALTON LORBACHER, Plaintiff v. HOUSING AUTHORITY OF THE CITY OF RALEIGH, FLOYD T. CARTER, former Executive Director, PAUL H. MESSENGER, current Executive Director and HORACE C. BRANTLEY III, former Deputy Executive Director, Defendants

No. COA97-129

(Filed 18 November 1997)

1. **Constitutional Law § 86 (NCI4th)— 42 U.S.C. § 1983— action against individuals—presumed in official capacity**

It was presumed that plaintiff was suing the named defendants under 42 U.S.C. § 1983 in their official capacity as officers of the Housing Authority where the complaint did not identify

---

18. *Id.* (Emphasis in original).

whether defendants were being sued in their individual or official capacities but the caption of the complaint and the allegations made therein refer to them by both their names and job titles. A suit against a defendant in his or her official capacity is simply another way of pleading an action against the municipality itself.

**2. Constitutional Law § 86 (NCI4th)— employment termination—42 U.S.C. § 1983—violation of free speech—— no policy or practice**

Summary judgment was properly granted for defendant Housing Authority on a claim under 42 U.S.C. § 1983 for deprivation of free speech arising from plaintiff's firing as Director of Development where plaintiff neither alleged nor brought forth any evidence that the Housing Authority has a policy or practice of discharging employees for the exercise of First Amendment rights. Although plaintiff alleges that the individual defendants were delegated final policy-making authority, the Housing Authority Board established personnel policies and adopted the employee handbook in question, which states that all personnel decisions regarding demotions and discharges are vested in the Executive Director and those designated to act on the Executive Director's behalf. The Executive Director is a final decision-maker in matters of promotions and discharges, but is not the final policy-maker with regard to substantive personnel matters.

**3. Trial § 43 (NCI4th)— summary judgment—motion to reconsider—new evidence**

The trial court did not abuse its discretion by denying plaintiff's motion to reconsider a summary judgment for defendant Housing Authority on a 42 U.S.C. § 1983 claim in light of new evidence where the additional evidence failed to establish that the Housing Authority itself was responsible for the violation of plaintiff's constitutional rights.

**4. Labor and Employment § 68 (NCI4th)— wrongful discharge—municipal agency—42 U.S.C. § 1983 claim distinguished**

Defendant Housing Authority could be sued for wrongful discharge where plaintiff brought a state claim for wrongful discharge and a claim under 42 U.S.C. § 1983 against the Housing Authority and individual officials arising from his dismissal from the Housing Authority. A state claim for wrongful discharge may

be based on the agency relationship between an entity and its officers and employees and plaintiff alleged that the individual defendants were acting in the scope and course of their employment when they discharged him. The court properly dismissed the claim against the individuals as they were not plaintiff's employers for purposes of a wrongful discharge claim and, while the Housing Authority contends that the state wrongful discharge claim against it should be dismissed for the same reasons as the § 1983 claim, the requirements for municipal liability under § 1983 are specifically driven by the text and legislative history of the federal statute.

**5. Labor and Employment § 77 (NCI4th)— agency negligence disclosed—wrongful discharge claim—summary judgment**

Summary judgment should not have been granted for defendant Housing Authority on a state wrongful discharge claim where plaintiff alleged that he was dismissed for giving truthful testimony and media statements about the Housing Authority's knowledge of dangerous conditions and inadequate maintenance programs which led to two deaths and defendant contended that plaintiff was discharged for failure to obtain a valid driver's license and for accepting rides from contractors in violation of policy. A valid claim for wrongful discharge exists when an at-will employee is discharged for an unlawful reason or in contravention of public policy and if plaintiff's discharge was in retaliation for his testimony, his claim falls well within the public policy exception. Plaintiff's evidence created a genuine issue of material fact as to the motive for his discharge; although defendant produced refuting evidence, it is for the finder of fact to determine the motive. However, the trial court correctly granted summary judgment on the issue of punitive damages since punitive damages may not be recovered from a municipal corporation absent statutory authorization.

**6. Constitutional Law § 105 (NCI4th)— employment dismissal—federal due process—employee handbook—no entitlement to continued employment**

The trial court properly dismissed under N.C.G.S. § 1A-1, Rule 12(b)(6) plaintiff's Fourteenth Amendment Due Process claim arising from his dismissal from the Housing Authority where plaintiff did not allege a liberty interest, failed to allege that he is covered by a statute or ordinance creating an entitlement to continued employment, and employee handbooks are not

considered part of the employment contract unless expressly included.

### 7. Constitutional Law § 105 (NCI4th)— employment termination—North Carolina Constitution—insufficient property interest

The trial court properly dismissed plaintiff's claim that his discharge from the Housing Authority violated the Law of the Land clause of the North Carolina Constitution where he lacked the requisite property interest in continued employment to trigger the protections afforded by the State Constitution.

### 8. Constitutional Law § 98 (NCI4th)— freedom of speech—state constitution—wrongful discharge claim—adequate protection

Plaintiff's discharge from the Housing Authority, allegedly for giving deposition testimony and media statements regarding improper Housing Authority practices, did not warrant a direct claim under the North Carolina Constitution for violation of freedom of speech because plaintiff's rights are adequately protected by a wrongful discharge claim.

### 9. Intentional Mental Distress § 2 (NCI4th)— employment discharge—allegations—insufficient

The trial court did not err by dismissing plaintiff's claim for intentional infliction of emotional distress arising from his discharge from the Housing Authority, allegedly for disclosing the Housing Authority's negligent operations, where defendant's conduct, even assuming the truth of the allegations, did not rise to the required level of extreme and outrageous conduct and plaintiff did not allege that defendants' conduct was intentional.

### 10. Negligence § 75 (NCI4th)— employment discharge—negligent infliction of mental distress—allegations—insufficient

The trial court properly dismissed plaintiff's negligent infliction of emotional distress claim arising from his discharge from the Housing Authority, allegedly for disclosing the Housing Authority's negligent operations. The conclusion that defendant's conduct was not extreme and outrageous with respect to plaintiff's intentional infliction of emotional distress claim also precludes any claim for negligent infliction of emotional distress.

LORBACHER v. HOUSING AUTHORITY OF THE CITY OF RALEIGH

[127 N.C. App. 663 (1997)]

Appeal by plaintiff from judgment entered 12 November 1996, by Judge Henry V. Barnette in Wake County Superior Court. Heard in the Court of Appeals 6 October 1997.

The purpose of the Housing Authority is to provide and maintain low income residential housing in the Raleigh area. Plaintiff worked for the Housing Authority for a number of years and eventually became "Director of Development." Part of plaintiff's responsibilities revolved around obtaining federal grant monies for improvements, supervising various employees, monitoring the work of consultants, and visiting construction sites to monitor for construction compliance.

On 29 June 1992, plaintiff lost his driver's license as a result of a driving while impaired conviction. Because performance of his duties required a valid driver's license, Brantley terminated plaintiff's employment on 21 July 1992. Plaintiff appealed his termination and agreed to find a car and driver for any necessary travel and was reinstated effective 8 August 1992.

As a result of negligent maintenance of a heating system, two residents of Walnut Terrace Apartments died from carbon monoxide poisoning on 10 October 1992. On 3 November 1992, a wrongful death action was filed against the Housing Authority. Plaintiff gave deposition testimony in the case on 22 October 1993 and testified regarding the Housing Authority's knowledge of the dangerous conditions at the apartment complex and failure to take any remedial action. Plaintiff was discharged by Paul Messenger on 28 October 1993.

In October 1994, plaintiff filed suit against the Housing Authority of the City of Raleigh, Floyd T. Carter, former Executive Director, Horace C. Brantley III, former Deputy Executive Director, and Paul H. Messenger, then current Executive Director. He alleged that his discharge resulted from his comments to the media about improper Housing Authority practices and his deposition testimony to the same effect.

Defendants claim plaintiff's discharge was not related to his deposition testimony but rather was the result of plaintiff's failure to obtain acceptable transportation arrangements that were necessary for the proper performance of his duties. Paul Messenger was hired as the new Executive Director of the Housing Authority, replacing Floyd Carter, on 20 September 1993. Shortly after his arrival, Messenger learned through a routine insurance check that plaintiff

did not have a valid license. Messenger also learned that plaintiff was accepting rides to construction sites from the contractors he was supervising, in contravention of Housing Authority policy. Messenger terminated plaintiff's employment on 28 October 1993 on the grounds that plaintiff could not fulfill the responsibilities of his job without a license and that accepting rides from the contractors he was to supervise created an unacceptable conflict of interest.

Plaintiff brought the following claims against defendants: (1) a 42 U.S.C. § 1983 claim for violation of his First Amendment rights, (2) violation of his Fourteenth Amendment Due Process rights, (3) a conspiracy claim under 42 U.S.C. § 1985, (4) violations of his state constitutional rights under the Law of the Land and Free Speech Clauses, and (5) state law claims against defendants for breach of their fiduciary duties, intentional infliction of emotional distress and negligent infliction of emotional distress. Plaintiff additionally requested punitive damages.

Defendants moved to dismiss all claims except the federal constitutional free speech claim and the wrongful discharge claim against the Housing Authority. On 1 May 1996, Judge Barnette partially granted defendants' motion. All claims against defendant Brantley were dismissed for the lack of any allegation of misconduct on his part. All the remaining claims covered were dismissed as well, except for plaintiff's claims against defendants Carter and Messenger for punitive damages. Subsequently, defendants' motion for summary judgment on plaintiff's free speech, wrongful discharge and punitive damages claims was granted on 2 October 1996. On the same day, plaintiff tendered additional evidence and filed a motion to reconsider or for relief from summary judgment. The trial court denied this motion and plaintiff appealed.

*William E. Moore, Jr. and Marvin Schiller for plaintiff appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Raymond M. Davis, for defendant appellee.*

ARNOLD, Chief Judge.

Plaintiff appeals from the trial court's order granting defendants' motion for summary judgment on plaintiff's 42 U.S.C. § 1983 claim for violation of his First Amendment rights, his state wrongful discharge claim, and claims for punitive damages against defendants Carter and Messenger. He also assigns error to the trial court's denial of his

motion to reconsider or for relief from summary judgment. Finally, plaintiff appeals from the partial grant of defendants' motion to dismiss on his Fourteenth Amendment Due Process claim, state constitutional Law of the Land and Freedom of Speech claims, and intentional and negligent infliction of emotional distress claims.

Summary judgment is appropriate when then there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Gregory v. Perdue, Inc.*, 47 N.C. App. 655, 656, 267 S.E.2d 584, 586 (1980). It is not the court's function to decide questions of fact when ruling on a motion for summary judgment; rather, the moving party must establish that there is an absence of a triable issue of fact. *Moore v. Bryson*, 11 N.C. App. 260, 262, 181 S.E.2d 113, 114 (1971) (citations omitted). All evidence must be considered in the light most favorable to the non-moving party. *Burrow v. Westinghouse Electric Corp.*, 88 N.C. App. 347, 350, 363 S.E.2d 215, 217, *disc. review denied*, 322 N.C. 111, 367 S.E.2d 910 (1988) (citations omitted).

**[1]** Plaintiff alleges that defendants deprived him of his First Amendment right to free speech in violation of 42 U.S.C. § 1983. The federal statute reads, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1994). The Housing Authority is a municipal corporation. *Jackson v. Housing Authority of High Point*, 316 N.C. 259, 341 S.E.2d 523 (1986). Although the language of § 1983 speaks in terms of "person," the United States Supreme Court holds that municipalities are "persons" for purposes of the statute. *Monell v. Department of Social Services*, 436 U.S. 658, 56 L. Ed. 2d 611 (1978).

Although plaintiff also brought claims against Housing Authority officers under the statute, we need only consider the liability of the Housing Authority for the § 1983 claim. Municipal officers may be sued under § 1983 in their official or individual capacity. *Hafer v. Melo*, 502 U.S. 21, 116 L. Ed. 2d 301 (1991). A suit against a defendant

in his/her official capacity is simply another way of pleading an action against the municipality itself. *Monell*, 436 U.S. 658, 690 n.55, 56 L. Ed. 2d 611, 635 n.55. Officials who are sued in their individual capacity are personally liable for damages, although a defense of qualified immunity may be available to them. *Harlow v. Fitzgerald*, 457 U.S. 800, 73 L. Ed. 2d 396 (1982).

In the present case, the complaint does not identify whether defendants Carter and Messenger are being sued in their individual or official capacities; however, the caption of the complaint, and the allegations made therein, refer to them by both their names and job titles. We presume that plaintiff is suing these individuals in their official capacity as officers of the Housing Authority. *See Kolar v. County of Sangamon of State of Ill.*, 756 F.2d 564, 568 (7th Cir. 1985). Therefore, we need only consider the liability of the Housing Authority with respect to this claim.

[2] Although a municipality may be sued under the statute, it may not be held liable solely on the basis of *respondeat superior*; rather, liability exists only if the entity itself is responsible for the violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 89 L. Ed. 2d 452, 462 (1986). The Housing Authority only can be held liable for the actions of its employees if it officially ordered or sanctioned the conduct, the employees responsible for plaintiff's demotion and discharge had final policy-making authority, or the action was taken pursuant to a municipal policy, practice or custom. *Id.* at 483 n.12, 89 L. Ed. 2d at 465 n.12.

Plaintiff neither alleges nor brings forth any evidence of the Housing Authority having a policy or practice of discharging employees for the exercise of First Amendment rights. Instead, plaintiff alleges that defendants Carter and Messenger were delegated final policy-making authority. It is on this theory of municipal liability alone which plaintiff rests his case. In order that the action properly may be considered a municipal policy, the employee must possess authority to establish "final policy with respect to the subject matter in question." *Id.* at 483, 89 L. Ed. 2d at 465. The determination of whether a specific official has final policy-making authority is governed by state or local law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 99 L. Ed. 2d 107, 119 (1988).

The Housing Authority handbook states that all personnel decisions regarding demotions and discharges are vested in the Executive Director and those designated to act on his/her behalf. The fact that

an official has some discretion in the exercise of his/her functions, in and of itself, does not give rise to municipal liability. *Pembaur*, 475 U.S. at 481-82, 89 L. Ed. 2d at 464. Although the executive director is a final decision-maker in matters of promotions and discharges, he is not the final policy-maker with regard to substantive personnel matters. The Housing Authority Board established personnel policies and adopted the employee handbook in question. Federal courts draw a line between the power to implement policy and the power to make policy. An official's ability to discharge an employee does not necessarily equate to the ability to create substantive policy. *See Greensboro Professional Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 966 (4th Cir. 1995) ("The discretion to hire and fire does not necessarily include responsibility for establishing related policy."). Plaintiff has failed to come forward with any evidence to support a viable theory of liability. Indeed, plaintiff failed to even address this element of a § 1983 claim in his brief. Accordingly, we conclude that summary judgment for defendant Housing Authority was properly granted.

[3] At this point, we also consider plaintiff's argument that in light of the introduction of new evidence, the trial court erred in denying his motion to reconsider or for relief from judgment. The standard of review on appeal from the trial court's denial of such a motion is whether the trial court abused its discretion. *Muse v. Charter Hospital of Winston-Salem, Inc.*, 117 N.C. App. 468, 481, 452 S.E.2d 589, *affirmed per curiam*, 342 N.C. 403, 464 S.E.2d 44 (1995). We conclude that the trial court did not abuse its discretion in this matter. The additional evidence failed to establish that the Housing Authority itself was responsible for the violation of plaintiff's constitutional rights.

[4] Plaintiff also brought a state law cause of action against defendants for wrongful discharge. The trial court properly dismissed the claim against the individual defendants as they were not plaintiff's employers for the purposes of a wrongful discharge claim. *See Sides v. Duke University*, 74 N.C. App. 331, 343, 328 S.E.2d 818, 827, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985). With regard to the Housing Authority, it argues that this claim against it fails for the same reasons that plaintiff's First Amendment claim fails. We disagree. Plaintiff brought suit against defendant Housing Authority for violation of his First Amendment rights pursuant to 42 U.S.C. § 1983. The requirements for municipal liability under § 1983 are specifically driven by the text and legislative history of this federal statute.

Plaintiff's wrongful discharge claim is not a federal, but a state cause of action. The requirement of a policy, practice or custom leading to municipal liability is therefore inapplicable in this area.

While *respondeat superior* is not a proper basis for liability under a § 1983 claim, a state law claim for wrongful discharge may be based on the agency relationship between an entity and its officers or employees. *See id.* (recognizing an enforceable claim against the defendant when plaintiff alleged that the individuals who discharged her were acting as agents of the defendant). In his complaint, plaintiff alleges that the individual defendants were acting in the course and scope of their employment with the Housing Authority when they discharged him.

[5] Having decided that the Housing Authority can be sued for wrongful discharge, we turn now to the merits of the claim itself. As a general rule in North Carolina, an employee-at-will has no claim for wrongful discharge. *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 260, 335 S.E.2d 79, 84 (1985), *disc. review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986). Either party may terminate the employment relationship for any reason, or for no reason at all. *Privette v. University of North Carolina*, 96 N.C. App. 124, 134, 385 S.E.2d 185, 190 (1989) (citations omitted). There are limits, however, to the employer's ability to discharge an at-will employee. A valid claim for wrongful discharge exists when an at-will employee is discharged for an unlawful reason or in contravention of public policy. *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989).

Assuming, as we must, that plaintiff's allegations are true, we first consider whether firing an employee for giving deposition testimony violates the public policy of this state. A discharge violates public policy if it tends to injure the public or is against the public good. *Id.* Plaintiff alleges he was discharged for giving truthful testimony regarding the Housing Authority's knowledge of dangerous conditions at the Walnut Terrace Apartments and inadequate maintenance programs which led to the death of two residents of the complex on 10 October 1992. If plaintiff's discharge was in retaliation for such testimony, then plaintiff's claim against the Housing Authority falls well within the public policy exception to at-will employment. This Court has often held that truthful testimony is necessary for the proper administration of justice and for the protection of the public good. *See, e.g., Williams v. Hillhaven Corp.*, 91 N.C. App. 35, 370

**LORBACHER v. HOUSING AUTHORITY OF THE CITY OF RALEIGH**

[127 N.C. App. 663 (1997)]

S.E.2d 423 (1988) (employee harassed and discharged after truthful testimony); *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985) (employee discharged after giving truthful deposition testimony).

The Housing Authority contends that plaintiff was not fired for his comments to the media and deposition testimony; rather, it argues that plaintiff's discharge resulted from his failure to obtain a valid driver's license and his acceptance of rides from contractors in violation of Housing Authority policy. This may be true, and if the Housing Authority can show that plaintiff would have been discharged regardless of his testimony, then plaintiff cannot recover. Summary judgment, however, is an extreme remedy and rarely should be granted in matters of motive and credibility determinations. *Burrow v. Westinghouse Electric Corp.*, 88 N.C. App. 347, 351, 363 S.E.2d 215, 218, *disc. review denied*, 322 N.C. 111, 367 S.E.2d 910 (1988) (citations omitted).

Plaintiff gave deposition testimony on 22 and 25 October 1993. Shortly thereafter on 28 October 1993, defendant terminated plaintiff's employment. Furthermore, plaintiff produced evidence that he had been discharged and reinstated approximately one year earlier for lack of a driver's license. Although defendants produced evidence refuting plaintiff's claim of retaliatory discharge, plaintiff's evidence created a genuine issue of material fact as to the motive for his discharge. In this case, summary judgment is inappropriate, as it is for the finder of fact to determine the motive behind plaintiff's discharge. *Id.* However, we do uphold the trial court's order granting defendants' motion for summary judgment on the issue of punitive damages. Absent statutory authorization, punitive damages cannot be recovered from a municipal corporation. *Long v. City of Charlotte*, 306 N.C. 187, 206-208, 293 S.E.2d 101, 113-15 (1982).

[6] Our standard of review for a Rule 12(b)(6) motion to dismiss is whether, as a matter of law, the complaint, treating its allegations as true, is sufficient to state a claim upon which relief may be granted. *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Plaintiff's complaint should be liberally construed and not dismissed "unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of his claim which would entitle him to relief." *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987).

Plaintiff alleges that his discharge violated the Due Process Clause of the Fourteenth Amendment. Cases involving due process

claims require a two-step analysis. First, does plaintiff have a liberty or property interest entitling him to due process protection? *Board of Regents v. Roth*, 408 U.S. 564, 33 L. Ed. 2d 548 (1972). Second, if such an interest exists, what process is due? *Matthews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18 (1976). Because plaintiff did not allege in his complaint that his liberty interests were violated, his sole claim for relief is based on a property interest in continued employment with the Housing Authority.

Although it protects property interests, the Constitution does not create such interests. Rather, property interests are created and defined by independent sources, such as state law. *Roth*, 408 U.S. at 577, 33 L. Ed. 2d at 561. Therefore, North Carolina law governs whether plaintiff has a property interest in continued employment. In this state, a legal presumption exists that all employees are at-will and have no continued entitlement to employment. *Still v. Lance*, 279 N.C. 254, 259, 182 S.E.2d 403, 406 (1971). An employee may be other than at-will if he has contracted for a definite period of time or if a statute or ordinance creates such a right. *Bishop v. Wood*, 426 U.S. 341, 344, 48 L. Ed. 2d 684, 690 (1976).

In his complaint, plaintiff alleges that he was a "regular or permanent" employee. Even when an employee is hired on a permanent basis, the relationship is still terminable at the will of either party. *Howell v. Credit Corp.*, 238 N.C. 442, 443-44, 78 S.E.2d 146, 147 (1953). Plaintiff fails to allege that he is covered by a statute or ordinance creating an entitlement to continued employment. Instead, plaintiff states that an employee handbook created such an entitlement by specifying only for-cause discharge. In *Johnson v. Mayo Yarns, Inc.*, 126 N.C. App. 292, 484 S.E.2d 840, *disc. review denied*, 346 N.C. 547, 488 S.E.2d 802 (1997), this Court affirmed a dismissal where the plaintiff failed to allege how such a handbook was made part of the employment contract. Employee handbooks are not considered part of the employment contract unless expressly included. *Salt v. Applied Analytical, Inc.*, 104 N.C. App. 652, 656, 412 S.E.2d 97, 99 (1991), *cert. denied*, 331 N.C. 119, 415 S.E.2d 200 (1992). Because plaintiff fails to allege a property interest protected by the Due Process Clause, the motion to dismiss with respect to this claim was properly granted.

[7] We turn our attention now to plaintiff's state constitutional claim. Plaintiff alleges his discharge violated the Law of the Land Clause of the North Carolina Constitution. N.C. Const. art. I, § 19. The North

Carolina Law of the Land Clause is generally considered the equivalent of the Due Process Clause and has been interpreted as requiring that neither property nor liberty may be deprived but by the general law, "the law which hears before it condemns. . . ." *State v. Hedgebeth*, 228 N.C. 259, 266, 45 S.E.2d 563, 568 (1947), *cert. granted*, 333 U.S. 854, 92 L. Ed. 1134, *and cert. dismissed*, 334 U.S. 806, 92 L. Ed. 1739 (1948) (citations omitted). Although a decision of the United States Supreme Court construing the Due Process Clause is persuasive in interpreting a claim brought under the North Carolina Law of the Land Clause, it is not controlling. *Watch Co. v. Brand Distributors, Inc.*, 285 N.C. 467, 474, 206 S.E.2d 141, 146 (1974). In this case, however, plaintiff's complaint fails to state a valid claim under the Law of the Land Clause for similar reasons. He simply lacks the requisite property interest in continued employment to trigger the protections afforded by our State Constitution. We hold, therefore, that the trial court properly dismissed plaintiff's complaint with respect to this claim.

[8] Plaintiff also alleges his discharge violates his freedom of speech secured by the North Carolina Constitution. Our Constitution guarantees that "[f]reedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained. . . ." N.C. Const. art. I, § 14. Our State Supreme Court views these words as a "direct personal guarantee" of the right of freedom of speech. *Corum v. University of North Carolina*, 330 N.C. 761, 781, 413 S.E.2d 276, 289, *cert. denied*, 506 U.S. 985, 121 L. Ed. 2d 431 (1992).

In *Corum*, the Court held that one whose state constitutional rights have been abridged has a direct claim under the appropriate constitutional provision. *Id.* at 782, 413 S.E.2d at 290. A claim is available, however, only in the absence of an adequate state remedy. *Id.* Because we determine that plaintiff's rights are adequately protected by a wrongful discharge claim against the Housing Authority, a direct constitutional claim is not warranted. *Barnett v. Karpinos*, 119 N.C. App. 719, 728, 460 S.E.2d 208, 213, *disc. review denied*, 342 N.C. 190, 463 S.E.2d 232 (1995).

[9] Plaintiff also assigns error to the dismissal of his intentional and negligent infliction of emotional distress claims, but we conclude that dismissal of these claims was also proper. In order to state a valid claim for intentional infliction of emotional distress, plaintiff must show that defendants engaged in extreme and outrageous conduct which was intended to cause severe emotional distress, or were recklessly indifferent to the likelihood that such distress would result,

and severe distress did result from defendants' conduct. *Dickens v. Puryear*, 302 N.C. 437, 452-53, 276 S.E.2d 325, 335 (1981). A successful claim for negligent infliction of emotional distress exists if defendants negligently engaged in conduct that results in severe distress, if this result was reasonably foreseeable. *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990).

Regarding plaintiff's intentional infliction of emotional distress claim, plaintiff has failed to allege conduct by defendants that is "so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency. . . ." *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985). As an initial matter, the determination of whether the alleged conduct is extreme and outrageous is a question of law for the court. *Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 198, 402 S.E.2d 155, 161 (1991) (citation omitted). Plaintiff alleges he was discharged to deflect responsibility for the deaths which occurred at Walnut Terrace Apartments and because he exercised his First Amendment rights and disclosed the Housing Authority's negligent operations. Even assuming the truth of plaintiff's allegations, defendants' conduct does not rise to the level of extreme and outrageous conduct as contemplated by existing case law. In *Trought v. Richardson* for instance, the plaintiff alleged her supervisors fired her for refusing to violate hospital operating procedures and spread false and malicious statements about the reasons for her discharge. 78 N.C. App. 758, 338 S.E.2d 617, *disc. review denied*, 316 N.C. 557, 344 S.E.2d 18 (1986). The Court held that as a matter of law the conduct did not "exceed all bounds usually tolerated by decent society." *Id.* at 763, 338 S.E.2d at 620.

Additionally, plaintiff fails to allege that defendants' conduct was intentional. Plaintiff's complaint merely states that defendants knew or should have known of his emotional and physical condition. In *Von Hagel v. Blue Cross and Blue Shield*, 91 N.C. App. 58, 370 S.E.2d 695 (1988), the Court held that the plaintiff's claim for intentional infliction of emotional distress was properly dismissed when the complaint only alleged that the defendant refused to pay on an insurance policy when it knew of the plaintiff's *vulnerable mental and physical condition*. The Court held the allegation was insufficient because it failed to demonstrate calculated conduct directed at the plaintiff. *Id.* at 64, 370 S.E.2d at 700. For these reasons, we conclude that the dismissal of plaintiff's intentional infliction of emotional distress claim was proper.

**[10]** The trial court also properly dismissed plaintiff's negligent infliction of emotional distress claim. We are not aware of any case specifically holding that the level of conduct required for an intentional infliction of emotional distress claim is the same as that required for a negligence action. We find no principled distinction however for employing a higher or lower threshold for one over the other. Therefore, our conclusion that defendant's conduct was not extreme and outrageous with respect to plaintiff's intentional infliction of emotional distress claim also precludes any claim for negligent infliction of emotional distress.

In summary, plaintiff's claim for wrongful discharge against the Housing Authority is remanded for trial. The trial court's rulings are otherwise affirmed.

Affirmed in part and remanded in part.

Judges EAGLES and MARTIN, Mark D., concur.