DEBRA RILEY, PLAINTIFF-APPELLANT v. LINDA DeBAER AND TIM MILLER, DEFENDANTS-APPELLEES

No. COA00-675

(Filed 19 June 2001)

**Emotional Distress— negligent infliction—summary judgment**

The trial court erred by granting summary judgment in favor of defendants on plaintiff's negligent infliction of emotional distress (NIED) claim based on the trial court's use of an erroneous standard in a prior Court of Appeals case requiring plaintiff to show defendant's conduct was extreme and outrageous to satisfy the first element of NIED, because: (1) an allegation of ordinary negligence will suffice as the first prong in a claim of NIED; (2) the trial court was bound by the retroactive application of our Supreme Court's interpretation of the elements necessary to establish a NIED claim, which includes an allegation of ordinary negligence along with the allegation that severe emotional distress was the foreseeable and proximate result of such negligence; and (3) recent Court of Appeals decisions have excluded the extreme and outrageous conduct requirement.

Appeal by plaintiff from judgment entered 9 March 2000 by Judge Howard E. Manning, Jr. in Durham County Superior Court. Heard in the Court of Appeals 20 April 2001.

*Browne, Flebotte, Wilson and Horn, P.L.L.C., by Martin J. Horn, for plaintiff-appellant.*

*Newsom, Graham, Hedrick & Kennon, P.A., by William P. Daniell, for defendants-appellees.*

BRYANT, Judge.

Plaintiff was employed as a manager of a Family Dollar Store. On 1 October 1990, she sustained a shoulder injury while retrieving a box from an overhead shelf. Plaintiff experienced pain in her left shoulder, arm and neck as a result of the injury. Plaintiff sought treatment with orthopaedic surgeon Dr. William Somers, on 11 October 1990. Dr. Somers prescribed physical therapy, however, physical therapy did not improve plaintiff's condition. Plaintiff also received injections into her left shoulder, but her condition did not improve as a result of the injections.

RILEY v. DeBAER

[144 N.C. App. 357 (2001)]

On 5 June 1991, plaintiff underwent surgery to repair a labral tear in her shoulder. Although plaintiff regained the motor strength in her shoulder, she continued to experience pain in her neck and shoulder. Plaintiff underwent additional shoulder surgery on 16 March 1992, but the pain in her left shoulder continued.

Dr. Somers, on 7 November 1991, referred plaintiff to neurologist Dr. Alan Finkel for evaluation and management of her shoulder pain. Dr. Finkel referred plaintiff to psychologist Dr. Helen Rogers for management of depression related to her chronic pain and for evaluation of cognitive dysfunction which she suffered following a seizure in July 1993. Plaintiff began treatment with Dr. Rogers commencing 10 August 1993, and has continued to receive Drs. Finkel and Rogers' services.

Plaintiff received temporary total disability benefits following her 5 June 1991 surgery. In 1993, Aetna Insurance Company (Aetna), the worker's compensation carrier for the Family Dollar Stores, referred plaintiff to Atlantic Behavioral Health Systems, Inc. (Atlantic), a vocational rehabilitation specialist, for evaluation of plaintiff's capabilities and to assist plaintiff in finding appropriate employment. Atlantic employees Linda DeBaer, a certified vocational rehabilitation specialist, and Tim Miller worked most closely with plaintiff during her evaluation.

Plaintiff was enrolled in an Atlantic program titled 'Job Club'. The program assisted injured workers in returning to the workforce. Plaintiff met with employees of Job Club in February 1994 and began participating in the program on 8 March 1994.

On 1 March 1994, plaintiff and DeBaer met with Dr. Somers to discuss appropriate jobs for the plaintiff. Dr. Somers approved plaintiff to seek light sedentary employment. Dr. Finkel advised DeBaer that plaintiff would be starting a new medication regimen and during the first few days she would need to be absent from Job Club. Neither Drs. Finkel nor Rogers advised Atlantic that plaintiff should not participate in Job Club.

While participating in Job Club, plaintiff interviewed for several positions. After interviewing for a job as an appointment setter for a photography studio, plaintiff was offered a position, however, she did not accept the offer.

Aetna determined that plaintiff had failed to accept a job offer within her capabilities and that she had sabotaged other job inter-

**RILEY v. DeBAER**

[144 N.C. App. 357 (2001)]

views. On 5 April 1994, Aetna unilaterally terminated plaintiff's worker's compensation benefits. On 3 May 1994, the Industrial Commission (Commission) allowed Aetna to cease payment of temporary total disability compensation to plaintiff. On 21 March 1996, the Commission entered an opinion and award stating that the termination of temporary total disability compensation had been improperly granted, and awarded plaintiff past and future benefits. The Commission also awarded plaintiff attorney's fees for the wrongful termination of benefits. Upon appeal to this Court, the Commission's opinion and award was upheld, except the award of attorney's fees was found to be inappropriate.

On 7 April 1997, plaintiff commenced this action in the District Court Division of Durham County, pursuing the claim of negligent infliction of emotional distress (NIED) against defendants Linda DeBaer and Tim Miller individually and Atlantic Behavioral Health Systems, Inc., now doing business as Carolina Rehabilitation, and previously doing business as Total Rehabilitation, Inc. (Total Rehab). Plaintiff contended that defendants were both personally negligent and professionally negligent in their pursuit of plaintiff's vocational rehabilitation.

Defendants filed an answer on 27 October 1997 alleging that plaintiff failed to state a claim upon which relief could be granted pursuant to Rule 12 of the North Carolina Rules of Civil Procedure. In addition, defendants denied plaintiff's claims of NIED and negligence. Plaintiff made a motion to amend the complaint and submitted an amended complaint on 8 October 1999, which more completely detailed the claim of NIED.

On 3 September 1999, defendants made a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, based on the pleadings, responses to written discovery and depositions taken. Superior Court Judge Howard E. Manning, Jr. entered his order on 9 March 2000 granting defendants' motion for summary judgment. Judge Manning based his ruling solely on the NIED standard announced in *Lorbacher v. Housing Authority of City of Raleigh*, 127 N.C. App. 663, 493 S.E.2d 74 (1997). Because *Lorbacher* is not the appropriate standard, we reverse the decision of the trial court granting summary judgment for the defendants.

I.

The plaintiff makes several arguments on appeal, however, we only address plaintiff's first argument as it is the dispositive issue on

appeal. Plaintiff contends that the trial court erred in relying upon *Lorbacher* as controlling authority concerning the issue of NIED.

Supreme Court decisions that change existing law are presumed to apply retroactively absent compelling reasons for limiting their retroactive effects. *Fowler v. North Carolina Dept. of Crime Control & Public Safety*, 92 N.C. App. 733, 735, 376 S.E.2d 11, 12, *rev. denied*, 324 N.C. 577, 381 S.E.2d 773 (1989). By mere implication, a subsequent decision cannot be held to overrule a prior case, unless the principle is directly involved and the inference is clear and compelling. *Cole v. Cole*, 229 N.C. 757, 762, 51 S.E.2d 491, 494-95 (1949). However, when changes are made retroactive, the changes apply to five categories of cases: (1) cases in which a new rule is announced; (2) cases in which factual event, trial, and appeal are all at an end but in which a collateral attack is brought; (3) cases pending on appeal when a decision is announced; (4) cases awaiting trial; and *(5) cases initiated in the future but arising from earlier occurrences.* *Alexander v. Quattlebaum*, 135 N.C. App. 622, 624, 522 S.E.2d 88, 90 (1999) (emphasis added).

In March 1997, our Court announced its decision in *Lorbacher*. In that case, Lorbacher was the "Director of Development" for the Raleigh Housing Authority, and partly responsible for supervising employees, visiting construction sites and monitoring for construction compliance. *Lorbacher*, 127 N.C. App. at 667, 453 S.E.2d at 76. On 29 June 1992, Lorbacher lost his driving privileges and consequently, his employment was terminated. However, on 8 August 1992, Lorbacher's employment was reinstated based on his agreement to find transportation for any necessary travel.

As a result of the negligent maintenance of a Walnut Terrace Apartment heating system, two apartment residents died from carbon monoxide poisoning. At a wrongful death trial, Lorbacher gave deposition testimony regarding the Housing Authority's knowledge of the dangerous condition and failure to take any remedial action. Lorbacher was subsequently discharged, supposedly because of his failure to obtain acceptable transportation arrangements that were necessary for the adequate performance of his job. *Id.* Lorbacher brought suit claiming, *inter alia*, negligent and intentional infliction of emotional distress caused by the Housing Authority's wrongful discharge. *Lorbacher*, 127 N.C. App. at 668, 453 S.E.2d at 77. The trial court dismissed Lorbachers' negligent and intentional infliction of emotional distress claims. Lorbacher appealed the dismissal decision to our Court.

The *Lorbacher* Court, announced the standard for a claim of NIED as requiring the plaintiff to show that the defendant: (1) negligently engaged in conduct; (2) it was reasonably foreseeable that the conduct would cause the plaintiff severe mental anguish; and (3) the conduct did cause the plaintiff to suffer severe mental anguish. *Lorbacher*, 127 N.C. App. at 676, 453 S.E.2d at 81.

To satisfy the first element of the NIED, the *Lorbacher* Court required the plaintiff to show the defendant's conduct was extreme and outrageous. *Lorbacher*, 127 N.C. App. at 677, 453 S.E.2d at 82. The Court did not distinguish a plaintiff's burden as to the first element of a NIED claim from the burden a plaintiff must satisfy when asserting an intentional infliction of emotional distress claim. The Court found that the plaintiff did not show that the Housing Authority's conduct was extreme and outrageous, thus the Court affirmed dismissal action as to emotional distress claims.

In 1998, the North Carolina Supreme Court in *McAllister v. Ha*, 347 N.C. 638, 496 S.E.2d 577 (1998), stated that when a plaintiff asserts a claim of NIED, "[a]lthough an allegation of ordinary negligence will suffice, a plaintiff must also allege that severe emotional distress was the foreseeable and proximate result of such negligence in order to state a claim; mere temporary fright, disappointment or regret will not suffice." *McAllister*, 347 N.C. at 645, 456 S.E.2d at 583 *quoting Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 395 S.E.2d 85 (1990).

In *McAllister*, plaintiffs had a baby on 8 May 1991. *McAllister*, 347 N.C. at 640, 496 S.E.2d at 580. In June 1991, plaintiffs received a letter from the State Health Department advising them that they needed to be tested for sickle cell disease because of the genetic traits carried by the wife. Plaintiffs went to the medical offices of Khie Sem Ha, M.D., where blood samples were drawn and sent to the State Laboratory of Public Health. Ha told plaintiffs if he found anything of concern in the lab results, he would call them. Plaintiffs never heard from defendant concerning the lab results, although plaintiffs visited him four additional times between June 1991 and September 1993.

In September 1993, the wife became pregnant with plaintiffs' second child, who was born on 27 May 1994. In June 1994, plaintiffs learned that their second child had sickle cell disease. They also learned that the results of the 1991 lab work showed the plaintiff-husband carried the sickle cell trait. Plaintiffs filed suit claiming *inter alia* that Ha was negligent in his duties, and that Ha's actions

amounted to extreme and outrageous conduct resulting in plaintiffs suffering extreme mental distress and financial loss. *McAllister*, 347 N.C. at 641, 456 S.E.2d S.E.2d at 580. The trial court granted Ha's motion to dismiss for failure to state a claim. *McAllister*, 347 N.C. at 640, 456 S.E.2d at 579. This Court, reversed the trial court's order dismissing the emotional distress claim and remanded the case. On discretionary review, the Supreme Court affirmed this Court's decision to reverse.

Although the *McAllister* Court did not directly state that its decision overruled the holding in *Lorbacher*, the same principle is directly involved in both cases and the inference in *McAllister* is clear and compelling—an allegation of ordinary negligence will suffice as the first prong in a claim of NIED.

We must note that both the *Lorbacher* and *McAllister* Courts cited to *Johnson* for their respective definitions for a claim of NIED. *Lorbacher*, 127 N.C. App. at 676, 483 S.E.2d at 81; *McAllister*, 347 N.C. at 645-46, 496 S.E.2d at 582-83 The *Johnson* Court required for a showing of NIED that: 1)the defendant negligently engaged in some act; 2) it was reasonably foreseeable that the conduct would cause the plaintiff severe emotional distress; and 3) the plaintiff did suffer severe emotional distress caused by defendant's negligent act. *Johnson*, 327 N.C. at 307, 345 S.E.2d at 97. The *Johnson* Court further stated that although an allegation of ordinary negligence will suffice, the plaintiff must allege that the severe emotional distress was the foreseeable and proximate result of defendant's negligent actions. *Id.*

In the instant case, plaintiff filed the complaint in April 1997, approximately one month after the *Lorbacher* decision; but the motion for summary judgment was not heard until after the decision in *McAllister*. The trial court was bound by the retroactive application of our Supreme Court's interpretation in *McAllister* of the elements necessary to establish a NIED claim. Absent a compelling reason to limit the retroactive effect of *McAllister*, we reverse the decision of the trial court granting summary judgment based solely on *Lorbacher*.

We also note that more recent Court of Appeals decisions have excluded the extreme and outrageous conduct requirement for a claim of NIED. *See Simmons v. Chemol Corp.*, 137 N.C. App. 319, 325, 528 S.E.2d 368, 371-72 (2000) ("An action for negligent infliction of emotional distress requires a showing that defendant negligently

engaged in conduct, which was reasonably foreseeable to cause, and did in fact cause, plaintiff to suffer severe emotional distress."); *Johnson v. Scott*, 137 N.C. App. 534, 538, 528 S.E.2d 402, 404 (2000) (stating the elements for a claim NIED as: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as "mental anguish"), and (3) the conduct did in fact cause the plaintiff severe emotional distress") *citing Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. at 304, 395 S.E.2d at 97.

For all of the reasons stated above, the decision of the trial court is

Reversed.

Chief Judge EAGLES and Judge McCULLOUGH concur.