CITIFINANCIAL, INC., F/K/A COMMERCIAL CREDIT CORPORATION, PLAINTIFF V. CYNTHIA D. MESSER, DEFENDANT/THIRD-PARTY PLAINTIFF V. T.L. DAVIS, STATE OF NORTH CAROLINA DEPARTMENT OF TRANSPORTATION, DIVISION OF MOTOR VEHICLES, THIRD-PARTY DEFENDANTS

No. COA04-261

(Filed 4 January 2005)

**Motor Vehicles— recovery of stolen vehicles—notice to subsequent purchaser**

The trial court erred by granting summary judgment for DMV in an action arising from the recovery of a stolen car where there was no evidence that DMV gave defendant, a subsequent purchaser, the notice required by statute. Although DMV argued that

defendant had no right to notice or a hearing because she could not show a paramount right to the car, her evidence showed a sufficient property interest to merit protection under the North Carolina Constitution. N.C.G.S. § 20-108(c).

Judge STEELMAN concurring.

Appeal by defendant from order entered 20 November 2003 by Judge Bradley B. Letts in Haywood County District Court. Heard in the Court of Appeals 13 October 2004.

*Russell L. McLean, III, for defendant/third-party plaintiff.*

*Attorney General Roy Cooper, by Assistant Attorney General Jeffrey R. Edwards, for the State.*

CALABRIA, Judge.

Cynthia D. Messer ("appellant") appeals the entry of summary judgment in favor of T.L. Davis ("Davis") and the State of North Carolina Department of Transportation, Division of Motor Vehicles ("DMV") (collectively "appellees"). We reverse.

On 24 June 1999, appellant executed a note and security agreement with Citifinancial, Inc., f/k/a Commercial Credit Corporation ("Citifinancial") in the principal amount of $9,352.81 for the purchase of a Chevrolet Monte Carlo. Citifinancial obtained a security interest in the vehicle to secure the loan.

In July of 2000, an officer of DMV conducted a routine vehicle identification number ("VIN") verification, discovered there were possibly two stolen vehicles from Canada sold by Timothy Ramey, and contacted the National Insurance Crime Bureau ("NICB") for assistance in locating a Canadian officer to aide in the investigation. Subsequent investigation indicated Ramey, his uncle, and his father were tampering, removing, or altering VINs of vehicles and selling those cars in the United States with new or altered VINs. Eight vehicles bearing VINs matching the VIN of a vehicle owned by the three Ramey suspects were located in North Carolina, one of which was registered to appellant.

On 19 July 2000, Davis seized and stored appellant's vehicle. At that time, Davis provided appellant with a document that stated he was "authorized to seize, take and possess any motor vehicle or motor vehicle part [which he had] reason to believe [was] stolen or

which ha[d] an altered, covered, defaced, removed or destroyed serial or identification number[]." The document went on to state that DMV would "notify the owner of a vehicle seized and stored officially of the location and purpose of the seizure within 15 days." Nothing in the record indicates any further written notice was given to appellant within that period.

Due to similarities in the VINs and other similar characteristics between appellant's vehicle and the car reported stolen in Canada, DMV concluded Ramey had removed the true VIN from the car stolen in Canada, replaced it with a VIN registered to him from a similar, and likely salvaged, vehicle, and sold it to appellant, who had subsequently relied on the most readily observable VINs as opposed to checking the VINs found elsewhere such as the frame and engine. Accordingly, on 5 September 2000, DMV turned the vehicle over to State Farm Insurance, the successor-in-interest to the Canadian owner from whom DMV concluded the car had been stolen.

On or about March 2001, appellant ceased making payments on the note and security agreement, and Citifinancial filed suit, seeking the balance of the amount owed. Appellant answered the complaint and filed a third-party complaint against appellees on 15 May 2001. Citifinancial moved for summary judgment against appellant, which the trial court granted on 9 October 2002. After denying in part appellees' motion to dismiss, appellees answered the third-party complaint and moved for summary judgment. The trial court granted appellees' motion for summary judgment on 20 November 2003. Appellant seeks review before this Court.

In her only assignment of error, appellant asserts the trial court erred as a matter of law in granting summary judgment in favor of appellees. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003). "In ruling on such motion, the trial court must view all evidence in the light most favorable to the non-movant, taking the non-movant's asserted facts as true, and drawing all reasonable inferences in her favor." *Glenn-Robinson v. Acker*, 140 N.C. App. 606, 611, 538 S.E.2d 601, 607 (2000).

North Carolina General Statutes § 20-108 (2003) governs issues arising from vehicles or component parts of vehicles without manu-

CITIFINANCIAL, INC. v. MESSER

[167 N.C. App. 742 (2005)]

facturer's numbers or with manufacturer's numbers that have been altered, changed, or obliterated. Under subsection (a), a person is guilty of a Class 2 misdemeanor if they knowingly undertake certain actions with respect to a vehicle or component part of a vehicle ("property") bearing an identification mark or number that has been modified "for the purpose of concealing or misrepresenting the identity" of the property. N.C. Gen. Stat. § 20-108(a). Where the property has such a modification to its VIN or designated officers of DMV have probable cause to believe there was a violation of subsection (a), those officers are permitted to take and possess it. N.C. Gen. Stat. § 20-108(b). After the seizure, the seizing officer must immediately notify DMV and the rightful owner, if known, and DMV has fifteen days to notify the person from whom the property was seized and all claimants with interest or title in the registration records of DMV. N.C. Gen. Stat. § 20-108(b),(c). The notice to the person from whom the property was seized must be sent by certified mail and must contain, *inter alia*, the following information: (1) DMV has taken custody of the property; (2) the name and address of the person or persons from whom the property was seized; (3) a statement that the property was seized for "investigation as provided in" N.C. Gen. Stat. § 20-108 and will be released to the rightful owner upon either a determination that the identification number has not been altered, changed or obliterated or presentation of satisfactory evidence of ownership of the property if no other person claims an interest within thirty days of when the notice was mailed. N.C. Gen. Stat. § 20-108(c). If another person claims an interest, a dispositional hearing for the property before a court is permitted. *Id.* This dispositional hearing may be commenced either by DMV after the property has come within the custody of one of its officers or by any possessor of the property. N.C. Gen. Stat. § 20-108(d). The purpose of the dispositional hearing is to allow the court to order whether the property should be sold, destroyed, converted to the use of DMV, or otherwise disposed of. *Id.*

The burden of establishing, by a preponderance of the evidence, the occurrence of a violation with respect to the property is upon DMV. N.C. Gen. Stat. § 20-108(h). Anyone claiming ownership to the property bears the burden of showing satisfactory evidence of ownership. N.C. Gen. Stat. § 20-108(i). No court order disposing of the property may issue unless the person from whom the property was seized and all claimants with interest or title in the registration records of DMV are provided (a) a postseizure hearing and (b) ten days' notice of the postseizure hearing via certified mail. N.C. Gen. Stat. § 20-108(f).

In the instant case, the record is devoid of evidence that DMV gave appellant notice complying with the requirements of N.C. Gen. Stat. § 20-108(c); however, DMV asserts non-compliance with N.C. Gen. Stat. § 20-108(c) is irrelevant because N.C. Gen. Stat. § 20-108(e) trumps the other provisions of N.C. Gen. Stat. § 20-108 and gives it the authority to "return[] a seized motor vehicle or component part to the owner following presentation of satisfactory evidence of ownership[.]" We disagree with DMV's proposed reading of the statute.

First, DMV would still have to notify the person from whom the property was seized as mandated by subsection (c) even if subsection (e) were construed in the manner suggested by DMV. Second, DMV's construction of subsection (e) would render untrue the notification required by subsection (c) by DMV to the person from whom the property was seized that the seized property would be released to the rightful owner upon presentation of satisfactory evidence of ownership "if no other person claims an interest in it within 30 days of the date the notice is mailed. Otherwise, a hearing regarding the disposition of [the seized property] may take place in a court having jurisdiction." N.C. Gen. Stat. § 20-108(c)(2)b.

Moreover, DMV's proposed reading of subsection (e) would raise significant constitutional concerns. While DMV, citing *McDonald's Corp. v. Dwyer*, 338 N.C. 445, 447, 450 S.E.2d 888, 890 (1994), suggests there can be no state procedural due process argument for lack of a "legitimate claim of entitlement" to the seized property, we are of the opinion that this view improperly restricts the required property interest. In *Dwyer*, our Supreme Court did not require a showing of title to establish a property interest. *Id.* The Court stated that the party need not have undisputed title to the property and that possession is sufficient: "Even if there are underlying disputes about the validity of their title, this should have no effect on defendants' standing to challenge the constitutionality of the statute. Defendants are also in open and full possession of the property. Accordingly, defendants' property interest cannot be seized without their consent or due process of law." *Id.*, 338 N.C. at 447-48, 450 S.E.2d at 890. We hold accordingly.

Although it is merely persuasive and not controlling, *see Lorbacher v. Housing Authority of the City of Raleigh*, 127 N.C. App. 663, 675, 493 S.E.2d 74, 81 (1997), we note our construction of appellant's due process rights under our state constitution accords with the approach adopted by the United States Supreme Court for the federal constitution:

CITIFINANCIAL, INC. v. MESSER

[167 N.C. App. 742 (2005)]

The Fourteenth Amendment's protection of "property," however, has never been interpreted to safeguard only the rights of undisputed ownership. Rather, it has been read broadly to extend protection to "any significant property interest," . . . . The appellants were deprived of such an interest in the replevied goods—the interest in continued possession and use of the goods . . . . Clearly, their possessory interest in the goods, dearly bought and protected by contract, was sufficient to invoke the protection of the Due Process Clause.

*Fuentes v. Shevin*, 407 U.S. 67, 86-87, 32 L. Ed. 2d 556, 573 (1972).

In the instant case, appellant's evidence tended to show she purchased and possessed the car without knowledge that it was stolen. This showing constitutes, in our mind, a sufficient property interest to merit protection by our constitution. DMV's argument, that appellant had no right to notice or a hearing because she could not show a paramount right to the car over that of the true owner, places the cart before the horse:

The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits. It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods.

*Fuentes*, 407 U.S. at 87, 32 L. Ed. 2d at 574 (internal quotation marks and citations omitted). Accordingly, we hold the trial court erred in granting summary judgment and remand for further proceedings not inconsistent with this opinion.

Reversed.

Judge GEER concurs.

Judge STEELMAN concurs with a separate opinion.

STEELMAN, Judge concurring.

I agree entirely with the majority opinion in this matter, but write separately to address the increasingly frequent abuse of the appendix to briefs by appellate counsel. In this case, counsel for the Department of Transportation (DOT) attached as a portion of the appendix to its brief, fourteen pages of material from five different Internet sites pertaining to vehicle identification numbers for Chevrolet automobiles. DOT argued this material in its brief to bolster its argument that the vehicle in question was in fact the vehicle stolen from Canada. This matter was decided by the trial court upon DOT's motion for summary judgment, which was granted on 20 November 2003. None of this material is contained in the record on appeal. All of the Internet material bears the date of 17 May 2004, two days prior to the filing of DOT's brief in this matter.

Rule 28(d) of the Rules of Appellate Procedure governs appendixes to briefs. N.C. R. App. P. 28(d). Subsection (d)(1)c allows an appellant to reproduce in an appendix the following: "relevant portions of statutes, rules, or regulations, the study of which is required to determine questions presented in the brief." While not expressly stated in Rule 28(d), it would appear that this provision would be equally applicable to appellees as well. None of the Internet material contained in appellee's appendix constitutes "statutes, rules, or regulations." On their face, it is clear the documents do not come from any website operated by a government agency or the manufacturer of Chevrolet automobiles, but rather are private sites. There is no provision in Rule 28(d) allowing for the inclusion of material found on the Internet in appendixes to appellant briefs.

"This Court has held, 'it [is] improper [for a party] . . . to attach a document not in the record and not permitted under N.C. R. App. P. 28(d) in an appendix to its brief.'" *Duke Univ. v. Bishop*, 131 N.C. App. 545, 547, 507 S.E.2d 904, 905 (1998) (quoting *Horton v. New South Ins. Co.*, 122 N.C. App. 265, 268, 468 S.E.2d 856, 858 (1996)). The rationale for this rule is clear. The role of an appellate court is to review the rulings of the lower court, not to consider new evidence or matters that were not before the trial court. If this were permitted, the appellate process would never end.

Appellate counsel should take care to follow the requirements of Rule 28(d) in placing material in an appendix. Failure to comply with this rule subjects counsel to sanctions by this court.