GLORIA ANN EVANS, PLAINTIFF V. JUDITH R. COWAN, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS DIRECTOR OF STUDENT HEALTH SERVICES, UNC-CH; BRUCE VUKOSON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE AFTERHOURS PROGRAM AT STUDENT HEALTH SERVICES, UNC-CH; AND JANE M. HOGAN, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS ASSOCIATE DIRECTOR OF STUDENT HEALTH SERVICES, UNC-CH; DEFENDANTS

No. COA97-781

(Filed 5 January 1999)

1. **Constitutional Law— State—Law of the Land Clause— employment interest—employment at will**

    The trial court properly granted summary judgment for defendant on a claim under Art. I, § 19 of the North Carolina Constitution (the Law of the Land Clause) arising from the termination of plaintiff's employment. Plaintiff must possess a property interest in the employment before the Law of the Land analysis may be undertaken and plaintiff's assertions that she fell outside the category of an at-will employee are unfounded.

2. **Constitutional Law— State—freedom of speech—public concern—reason for discharge**

    The trial court did not err by granting summary judgment for defendant on plaintiff's free speech claim under the North Carolina Constitution arising from the termination of her employment where, assuming that the Whistleblower Act did not afford an adequate state remedy, plaintiff's statements related to

1

EVANS v. COWAN

[132 N.C. App. 1 (1999)]

internal policies and office administration and there was no fore-cast of evidence showing that her statements were either the motivating or a substantial factor underlying her dismissal.

Appeal by plaintiff from order filed 16 April 1997 by Judge Robert H. Hobgood in Orange County Superior Court. Heard in the Court of Appeals 18 February 1998.

*McSurely Dorosin & Osment, by Alan McSurely, Mark Dorosin and Ashley Osment, for plaintiff-appellant.*

*Attorney General Michael F. Easley, by Thomas J. Ziko and Celia Grasty Jones, for defendants-appellees.*

JOHN, Judge.

Plaintiff appeals the trial court's grant of summary judgment in favor of defendants. We affirm the trial court.

Pertinent factual and procedural information includes the following: Defendant Jane Hogan (Dr. Hogan) was awarded a Ph.D. degree in health care administration in 1991 by the University of Pennsylvania. In 1990, she served as a volunteer consultant at the University of North Carolina at Chapel Hill (UNC-CH) Student Health Services (SHS). In that capacity, Dr. Hogan contacted plaintiff and suggested employment at SHS to plaintiff. The latter had under consideration a tenure track faculty position at the University of South Carolina School of Nursing, but instead agreed 9 April 1990 to become Associate Director of the AfterHours Program (AfterHours) at SHS. AfterHours provided health services to UNC-CH students during evenings, weekends and holidays.

Plaintiff joined a task force comprised of defendant Dr. Bruce Vokoson (Dr. Vokoson), Director of AfterHours; Dr. Hogan; defendant Dr. Judith Cowan (Dr. Cowan), Director of SHS; and Jaclyn Jones (Jones), Acting Director of Nursing. The task force was seeking methods of improving the efficiency of SHS. In addition, plaintiff's duties included clinical responsibilities and the task of recruiting and supervising physician extenders, *i.e.*, physician assistants attached to a physician's medical license, employed in AfterHours.

The AfterHours task force met regularly for several months. In December 1990, plaintiff suggested that SHS change its practice of paying "moonlighting" physicians to provide AfterHours medical care. In plaintiff's opinion, that service could be more efficiently and

economically furnished by full-time nurse practitioners. According to plaintiff, this suggestion made Dr. Vukoson "visibly angry."

In task force meetings, plaintiff also sought implementation of a comprehensive alcohol policy for SHS, noting "most of our patients' problems [are] alcohol-related." At one meeting, plaintiff also expressed concern that Dr. Hogan had acted as the second R.N. covering a SHS night shift. Plaintiff noted Dr. Hogan was a non-employee acting in a medical capacity at a state institution.

In April 1991, Dr. Cowan informed plaintiff that her job responsibilities would be strictly clinical as of 1 July 1991. Shortly thereafter, plaintiff developed pleural pericarditis, an inflammation of the lung tissue and heart covering. Plaintiff informed Jones, her supervisor, that she expected to return to work the week of 5 May 1991. However, because her sick leave was exhausted, plaintiff actually resumed her duties 29 April 1991. On 30 April 1991, Dr. Vukoson telephoned plaintiff's cardiologist to ascertain if plaintiff was working contrary to her physician's instructions.

Plaintiff subsequently received a letter dated 6 May 1991, signed by Jones and Drs. Vukoson and Cowan, described therein as a "Final Written Warning for personal conduct." Noting plaintiff's earlier than anticipated return to work, the correspondence asserted plaintiff's "inconsistent communications" had resulted in 1) the waste of administrative time expended in procuring coverage for her shifts, 2) inconvenience to staff who had agreed to provide coverage, and 3) diminishment in supervisory and employee relations as a result of the confusion. In addition, plaintiff was relieved of responsibility for the AfterHours schedule. According to plaintiff, the warning communicated by the letter was rescinded 30 August 1991.

In May 1991, plaintiff learned at a nursing staff meeting that SHS planned to use "Fellows," physicians who were current recipients of a fellowship in a graduate medical education program, as back-up supervision for nurse practitioners in AfterHours. To be approved to practice in North Carolina, nurse practitioners must work continuously under the supervision of a primary supervising physician (PSP). Believing this new policy would directly conflict with 21 N.C.A.C. 32M.0009(5)(a), plaintiff approached Jones and Dr. Cowan with her concerns. Dr. Cowan contacted the Board of Medical Examiners (the Board) to request clarification of the regulation and obtain advice regarding the proposed practice. Dr. Cowan was informed the physicians in question could properly serve as back-up supervisors. This

response was consistent with information Dr. Hogan had sought and received from the Board.

Plaintiff's re-certification with the Board as a nurse practitioner came due in June 1991. Dr. Vukoson, as plaintiff's PSP, was required to sign her application for reapproval to practice, and despite some reluctance, he did so. However, by copy of a letter to the Board dated 18 October 1991, Dr. Vukoson advised plaintiff he intended to withdraw as her PSP effective 1 January 1992. Dr. Vukoson indicated this decision was based on his increasing lack of trust in plaintiff and what he perceived as her lack of respect for his medical license.

In her deposition, Dr. Cowan related that Dr. Vukoson had communicated to her two instances of plaintiff's failure to follow established protocol in treating students. The first concerned a student with a history of suicide, and the second involved a prescription to a student of a drug not in the treatment protocol and allowing that student to leave SHS while "complaining of what could have been a serious reaction with the [drug]." Dr. Cowan also indicated she was aware of a "profound communication difficulty, such a profound difference in perceptions" between plaintiff and Dr. Vukoson.

On 14 November 1991, the UNC-CH Medical Staff (the Staff) passed a resolution (the resolution) under which only physicians serving as full-time employees of the Staff and working in the same section as a physician extender were permitted to serve as the latter's PSP. This rule in effect prevented any physician other than Dr. Vukoson from acting as plaintiff's PSP.

As a result of the resolution, plaintiff was unable to maintain the necessary medical credentials for her position and was notified she would be discharged as of 6 May 1992. Plaintiff received a pre-termination hearing 24 April 1992 and appealed through the highest available grievance procedure levels. Ultimately, UNC-CH Chancellor Paul Hardin upheld plaintiff's discharge for failure to maintain credentials.

On 16 November 1993, plaintiff filed the instant action in Orange County Superior Court, alleging slander, violation of her federal constitutional rights and violation of her rights under Article I, §§ 1, 12, 14 and 19 of the North Carolina Constitution. Following removal of the case by defendants to the United States District Court for the Middle District of North Carolina, defendants moved for summary judgment. In an order filed 6 January 1995, the federal court granted

EVANS v. COWAN

[132 N.C. App. 1 (1999)]

summary judgment on the federal constitutional and slander claims and remanded the state constitutional claims brought against defendants in their official capacities to Orange County Superior Court.

On 14 February 1995, defendants sought summary judgment from the trial court on plaintiff's state constitutional claims, arguing each was barred by *res judicata* as being "identical in all respects to the federal constitutional claims already adjudicated." Defendants' motion was allowed, and plaintiff filed timely notice of appeal.

On appeal, this Court reversed the trial court's grant of summary judgment and remanded. *See Evans v. Cowan*, 122 N.C. App. 181, 468 S.E.2d 575 (1996) ("an independent determination of plaintiff's constitutional rights under the state constitution is required"). Upon review by our Supreme Court, the ruling of this Court was affirmed *per curiam. Evans v. Cowan*, 345 N.C. 177, 477 S.E.2d 926 (1996).

Following remand to Orange County Superior Court, defendants again moved for summary judgment. The motion was granted in an order filed 16 April 1997. Plaintiff appeals.

Summary judgment is properly entered when the pleadings, depositions, answers to interrogatories, admissions and affidavits show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. N.C.R. Civ. P. 56; *Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). The burden is on the movant to show:

(1) an essential element of plaintiff's claim is nonexistent; (2) plaintiff cannot produce evidence to support an essential element of its claim; or (3) plaintiff cannot surmount an affirmative defense raised in bar of its claim.

*Lyles v. City of Charlotte*, 120 N.C. App. 96, 99, 461 S.E.2d 347, 350 (1995), *rev'd on other grounds*, 344 N.C. 676, 477 S.E.2d 150 (1996). In assessing whether this burden is met, all inferences are to be viewed in the light most favorable to the non-movant. *Crow v. Citicorp Acceptance Co.*, 319 N.C. 274, 281, 354 S.E.2d 459, 464 (1987).

[1] Bearing these general principles in mind, we first consider plaintiff's assertion that her termination violated Article I, § 19 of the North Carolina Constitution (the Law of the Land Clause). The Law of the Land Clause provides that "[n]o person shall be . . . in any manner deprived of his life, liberty, or property, but by the law of the land,"

EVANS v. COWAN

[132 N.C. App. 1 (1999)]

N.C. Const. art. I, § 19, and has generally been held to be equivalent to the Due Process Clause of the United States Constitution. *Lorbacher v. Housing Authority of the City of Raleigh*, 127 N.C. App. 663, 675, 493 S.E.2d 74, 81 (1997). Given the similarities, a decision of the United States Supreme Court interpreting the Due Process Clause is persuasive, though not controlling, authority for interpretation of the Law of the Land Clause. *Id.*

Defendants argue plaintiff was an employee at will with no vested property right in continued employment, and thus failed to show the threshold element of a due process analysis. Plaintiff, apparently recognizing that the weight of authority supports defendants' position, *see, e.g., Lorbacher*, 127 N.C. App. at 675, 493 S.E.2d at 81 ("plaintiff's complaint fails to state a valid claim under the Law of the Land Clause . . . [because] [h]e simply lacks the requisite property interest in continued employment to trigger the protections afforded by our State Constitution"); *Woods v. City of Wilmington*, 125 N.C. App. 226, 234, 480 S.E.2d 429, 434 (1997) (trial court's grant of summary judgment to defendant on Article I, § 19 claim affirmed where "plaintiff did not possess a cognizable property interest in continued employment protected by the North Carolina Constitution"); and *Ware v. Fort*, 124 N.C. App. 613, 617, 478 S.E.2d 218, 221 (1996) (plaintiff's argument failed "because plaintiff simply had no property right in the position of which he could be constitutionally deprived—under either the North Carolina or federal constitutions"), nonetheless urges us to

> take an independent approach to the unique fact situation here, informed by the particularities of North Carolina constitutional jurisprudence, reflecting the unique language, history and policy of the North Carolina Constitution.

However, plaintiff is unable to point us to a case supporting her position, and we agree with defendants that plaintiff must possess a property interest in the employment at issue before the Law of the Land Clause analysis may be undertaken.

We consider then whether the requisite property interest is present in the case *sub judice*. This jurisdiction has long adhered to the employment-at-will doctrine, *i.e.* "[w]here a contract of employment does not fix a definite term, it is terminable at the will of either party, with or without cause." *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990) (citations omitted). An employee at will has no property interest by virtue of her employment, though an enforceable interest in continued employment may

"be created by [statute], or by an implied contract." *Howell v. Town of Carolina Beach*, 106 N.C. App. 410, 417, 417 S.E.2d 277, 281 (1992) (citations omitted).

Plaintiff, having accumulated but twenty-five months of service, makes no claim of statutory "permanent employee status" under N.C.G.S. § 126-5(c)(1) prior to 1 July 1993. *See also* N.C.G.S. § 126-15.1 (1995) ("probationary employee" is one exempt from state Personnel Act because not "continuously employed for the period of time required by G.S. 126-5(c)). However, plaintiff asserts an implied employment contract in that

> [she] was heavily recruited for the position at SHS and lured away from a better paying tenure track position at the University of South Carolina; was promised that she would be able to continue to conduct her research; given a joint appointment for a time certain with the School of Nursing; and assured that while she would be accepting a position as a PE II, her position would be quickly upgraded to a PE III.

This Court has previously held that an implied employment contract may arise out of representations and additional consideration proffered at the time of hiring. *See Sides v. Duke University*, 74 N.C. App. 331, 345, 328 S.E.2d 818, 828, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490 (1985) (allegations (1) that plaintiff was assured by employer "she could only be discharged for incompetence, [(2) and that] these assurances induced her to move here from Michigan in order to accept the job offer, and [(3)] were part of her employment contract," sufficient "to remove plaintiff's employment contract from the terminable-at-will rule" for purposes of surviving motion to dismiss breach of contract claim pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6) (1990) for failure to state a claim). However, our Supreme Court has recently cast doubt upon the *Sides* holding. *See Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 334, 493 S.E.2d 420, 424 (1997) (change of residence exception to employment-at-will doctrine disapproved, and "employer's assurances of continued employment [held not to] remove an employment relationship from the at-will presumption").

In addition, *Sides* is readily distinguishable from the instant case. In *Sides*, the plaintiff was assured individuals in her position could be discharged only for incompetence. *Sides*, 74 N.C. App. at 345, 328 S.E.2d at 828. Nothing in the record indicates plaintiff herein received any analogous promise. Moreover, the *Sides* plaintiff moved from

EVANS v. COWAN

[132 N.C. App. 1 (1999)]

Michigan to North Carolina to accept employment. On the other hand, plaintiff acknowledged "there were some good reasons why it might be convenient" to remain in Chapel Hill as opposed to relocating to South Carolina, because her data set was located in Chapel Hill.

We therefore conclude that plaintiff's assertions she fell outside the category of an at-will employee are unfounded. *See Salt v. Applied Analytical*, Inc., 104 N.C. App. 652, 659, 412 S.E.2d 97, 101 (1991) (no additional consideration where plaintiff failed to show assurances containing "specific terms or conditions, as in *Sides*"), cert. denied, 331 N.C. 119, 415 S.E.2d 200 (1992); *see also McMurry v. Cochrane Furniture Co.*, 109 N.C. App. 52, 57-58, 425 S.E.2d 735, 739 (1993) ("[p]laintiff's failure to accept a tentative offer of employment elsewhere in return for defendant's gratuitous offer of continued employment for an indefinite period was . . . not sufficient additional consideration" to create implied contract). Accordingly, because plaintiff lacked a property interest in continued employment, the trial court's grant of defendant's summary judgment motion on plaintiff's Law of the Land Clause claim is affirmed.

**[2]** Turning to plaintiff's freedom of speech claim, we note that the North Carolina Constitution proclaims that "[f]reedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained . . . ." N.C. Const. art. I, § 14. Our Supreme Court has deemed the foregoing section "a direct personal guarantee of each citizen's right of freedom of speech." *Corum v. University of North Carolina*, 330 N.C. 761, 781, 413 S.E.2d 276, 289, cert. denied, 506 U.S. 985, 121 L. Ed. 2d 431 (1992). Nonetheless, a citizen asserting abridgement of her state constitutional rights may assert a direct claim thereunder only absent an adequate state remedy. *Id.* at 782, 413 S.E.2d at 289. The judiciary "must bow to established claims and remedies where these provide an alternative to the extraordinary exercise of its inherent constitutional power." *Id.* at 784, 413 S.E.2d at 291.

Arguing that plaintiff possessed an adequate state remedy precluding her direct constitutional claim, defendants point to what is referred to as our "Whistleblower Act," N.C.G.S. §§ 126-84 through 126-88 (1995). In her complaint, plaintiff alleged she was discharged in retaliation for her "good faith and truthful communications about important health and administrative issues at the Student Health Services," speech protected by the North Carolina Constitution. Plaintiff maintains the Whistleblower Act did not afford an adequate state remedy for this claim. Assuming *arguendo* plaintiff is correct,

we nonetheless hold summary judgment was proper on her freedom of speech claim.

For such a claim to be properly advanced, the speech at issue first must involve a matter of public concern. *Connick v. Myers*, 461 U.S. 138, 146, 75 L. Ed. 2d 708, 719 (1983). Second, "such protected speech or activity [must have been] the 'motivating' or 'but for' cause for [the plaintiff's] discharge or demotion." *Warren v. New Hanover County Bd. of Education*, 104 N.C. App. 522, 525-26, 410 S.E.2d 232, 234 (quoting *Jurgensen v. Fairfax County*, 745 F.2d 868, 877-78 (4th Cir. 1984)). Resolution of these issues is a matter of law for the court. *Id.*

As to the question of public concern, the court must look to the content, form and context of the speech involved. *Connick*, 461 U.S. at 147-48, 75 L. Ed. 2d at 720; *see also Corum*, 330 N.C. at 775, 413 S.E.2d at 285. The test is whether the employee was speaking as a citizen about matters of public concern, or as an employee on matters of personal interest. *Connick*, 461 U.S. at 147, 75 L. Ed. 2d at 720. Moreover, complaints about conditions of employment or internal office affairs generally concern an employee's self-interest rather than public concern, even though a governmental office may be involved:

> To presume that all matters which transpire within a government office are public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. . . . [T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs.

*Id.* at 149, L. Ed. 2d at 721; *see also Daniels v. Quinn*, 801 F.2d 687, 690 (4th Cir. 1986) ("matters of public concern [for First Amendment] purposes must relate to wrongdoing or a breach of trust, not ordinary matters of internal . . . policy") (citation omitted); *see also Jurgensen*, 745 F.2d at 871 (report dealing with police department released by employee not matter of public concern because content of report did not involve or allege illegal activity, corruption, abuse of power, waste or discrimination); *Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 354, 342 S.E.2d 914, 925 (no violation of First Amendment rights where "[p]etitioner's speech, his criticism of [department head], was not based on public-spirited concern. Instead, it focused on his own personal displeasure with . . . internal policies"), *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986); and

*Pressman v. UNC-Charlotte*, 78 N.C. App. 296, 301-02, 337 S.E.2d 644, 648 (1985) (no violation of First Amendment rights where plaintiff's "criticism not based on public-spirited concern but more narrowly focused on his own personal work and personal displeasure with internal policies").

In the case *sub judice*, plaintiff has asserted her termination was occasioned in retaliation for statements uttered regarding four main topics: (1) her proposal to employ nurse practitioners rather than moonlighting physicians in the AfterHours program; (2) her reservations regarding the use of Fellows as back-up supervisors; (3) her concern directed at Dr. Hogan's volunteer status and its concomitant liability implications for SHS; and (4) her expression of the need for establishing a protocol for alcohol-related student health issues. Upon careful review of the record, we conclude each of the foregoing related to internal policies and office administration of SHS and did not rise to the level of public concern.

We note, for example, that no evidence in the record indicates plaintiff ever voiced her concerns publicly outside the employment setting, which would tend to indicate a public concern. *See Godon v. N.C. Crime Control & Public Safety*, 959 F. Supp. 284 (E.D.N.C. 1997) (plaintiff's comments to supervisors at public academy concerning alleged race and sex discrimination in discharge of certain cadets did not constitute protected speech when plaintiff simply approached supervisors with verbal complaints); *cf. Lenzer v. Flaherty*, 106 N.C. App. 496, 501-02, 507-09, 418 S.E.2d 276, 279-282, 284 (plaintiff's speech protected where she reported perceived laxity of employer's investigation into possible patient mistreatment to State Bureau of Investigation, and where evidence indicated plaintiff's concerns had some basis in fact and employer sought to keep allegations from being exposed), *disc. review denied*, 332 N.C. 345, 421 S.E.2d 348 (1992). In addition, regarding the use of Fellows as back-up supervisors, all the evidence indicates, plaintiff's expressed concerns notwithstanding, that the practice was not illegal and was indeed permitted under the applicable regulations. Thus not only was the matter merely indicative of plaintiff's private concern, but plaintiff's concerns proved to be unjustified.

Most significantly, however, assuming *arguendo* the substance of plaintiff's comments touched upon public concern, we are unable to conclude as a matter of law that plaintiff's statements were the motivating, or substantial, factor behind her termination. *See Warren*, 104

MATTHEWS v. CHARLOTTE-MECKLENBURG HOSP. AUTH.

[132 N.C. App. 11 (1999)]

N.C. App. at 525-26, 410 S.E.2d at 234. Dr. Vukoson testified he removed plaintiff from his license because she did not give his license the proper respect. Dr. Cowan related two instances wherein plaintiff failed to follow established protocol in treating students. Dr. Cowan also referenced plaintiff's inability to communicate with Dr. Vukoson and Jones, her supervisors. By contrast, while plaintiff's complaint alleged she was discharged in retaliation for protected speech, there was no forecast of evidence showing her statements were either the motivating or a substantial factor underlying her dismissal. Indeed, in her lengthy deposition, plaintiff simply reiterated her "belief" she was terminated in retaliation for expressing her concerns. *See Lenzer,* 106 N.C. App. at 510, 418 S.E.2d at 284 ("the causal nexus between protected activity and retaliatory discharge must be something more than speculation"). Accordingly, the trial court did not err in allowing summary judgment against plaintiff on her free speech claim.

In sum, for the reasons set forth herein, the order of the trial court granting defendants' motion for summary judgment is in all respects affirmed.

Affirmed.

Judges WYNN and McGEE concur.