**Norman S. BECK, Plaintiff,**

v.

**The CITY OF DURHAM, Orville Powell, Individually and in his official capacity as City Manager of the City of Durham; J.W. McNeil, Individually and in his official capacity as Chief of Police of the City of Durham; P. Lamont Ewell, Individually and in his official capacity as City Manager of the City of Durham, Defendants.**

**No. 1:99CV1142.**

United States District Court, M.D. North Carolina.

Nov. 23, 2000.

845

Joan M. Mitchell, Donald R. Von Hagen,
Mitchell Law Offices, P.A., Carey Louise

Ewing, Ewing Law Center, P.C., Durham, NC, for Plaintiff.

Thomas H. Lee, Jr., Newsom Graham Hedrick & Kennon, P.A., Patrick W. Baker, Office of City Attorney, Joel Miller Craig, Newsom Graham Hedrick & Kennon, P.A., Durham, NC, for Defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

## I. INTRODUCTION

This matter comes before the Court on a Motion to Dismiss, or in the alternative, Summary Judgment [Document # 2] filed by Defendants City of Durham, Orville Powell, and P. Lamont Ewell. This matter is also before the Court on a Motion to Dismiss, or in the alternative, Summary Judgment [Document # 6] filed by Defendant J.W. McNeil.[1] Both motions are directed toward Plaintiff Norman S. Beck's federal claims for race discrimination in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1981, as well as Plaintiff's state law claims for wrongful termination, negligent hire, negligent retention, negligent supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, tortious interference with contract, and tortious interference with future relations and/or prospective advantage.

For the reasons that follow, Defendants' respective Motions to Dismiss are GRANTED as to Plaintiff's claims for violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1981. Furthermore, as stated herein, because the Court will grant Defendants' Motions to Dismiss as to Plaintiff's federal claims, the Court will not consider Defendants' Motions to Dismiss as to Plaintiff's remaining state law claims. Instead, pursuant to 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismiss the state law claims without prejudice.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a Jewish male, served as a police officer for the Durham Police Department ("DPD") from 1979 to 1996. By the end of his employment with the DPD, he had attained the rank of Sergeant. During the time of Plaintiff's employment, the City of Durham employed Defendant Orville Powell as the City Manager. During this time, the city also employed Defendant J.W. McNeil as a supervisor in the DPD and later as Chief of Police. The city no longer employs Powell or McNeil. Defendant P. Lamont Ewell is the present City Manager.

In 1989, Plaintiff was a Traffic Supervisor and was responsible for DWI enforcement, accident investigation and public awareness. His immediate supervisor was McNeil, who had not yet been promoted to Chief of Police. Plaintiff alleges that during this period, McNeil called Plaintiff to his office and informed him that one of Plaintiff's subordinate officers had written a speeding ticket for Michelle Evans, a personal friend of McNeil's. Plaintiff states that McNeil ordered Beck to void the ticket. Plaintiff alleges that because McNeil's order was in violation of the law and the DPD's General Order Policy on voiding citations, Plaintiff refused to follow the order. Plaintiff states that he informed McNeil that if McNeil proceeded to have the ticket unlawfully voided, Plaintiff would take the matter to the District Attorney. Plaintiff alleges that following this incident, McNeil's treatment of and behavior toward Plaintiff became increasingly hostile and harassing. (Compl. ¶ 12.)

---

1. Though there are two motions for dismissal in this case, all Defendants move to dismiss on identical grounds. Consequently, Plaintiff has responded to both motions with one response brief. Also, all Defendants have joined in one reply brief in support of their motions to dismiss. Accordingly, the Court will address the arguments raised in the two motions for dismissal as if they were raised in one motion. However, the Court's ruling will apply to both motions.

Plaintiff alleges that as retaliation for the 1989 incident, McNeil assigned Plaintiff to on-call status twenty-four hours a day, seven days a week with no relief for six years. Plaintiff also alleges that McNeil took Plaintiff's office in the main police building away from him. Furthermore, Plaintiff states that McNeil assigned Plaintiff's units to walking patrol, leaving Plaintiff's unit understaffed and requiring Plaintiff to work long hours. (Compl.¶ 15.) Subsequently, McNeil was promoted to Chief of Police in 1992. (Compl.¶ 4.) Plaintiff states that in addition to the harassment he suffered as a result of his disagreement with McNeil, Plaintiff also suffered retaliation for exposing the actions of McNeil and other officers when those officers attempted to conceal evidence from accident investigations done under Plaintiff's supervision in 1994 and 1995. (Compl.¶¶ 13, 14.)

In addition to these instances of retaliation, Plaintiff alleges that he also suffered racial harassment from McNeil and the other officers. Plaintiff is white and Jewish, while McNeil and Ewell are black. Plaintiff alleges that McNeil openly referred to white officers as "Mark Furmans" and made jokes about Jewish people. Plaintiff states that another officer, Major Beard, told Plaintiff that when Louis Farrakhan was President, Jews would be "taken care of." (Compl.¶¶ 66, 67.) Plaintiff also alleges that McNeil intervened in the hiring and training process in order to hire black females who did not meet the DPD's standards for hiring and training. Plaintiff states that McNeil removed a captain from his position as a trainer because he refused to pass black females who failed the fitness and academic training requirements. (Compl.¶ 27.) Plaintiff, however, does not allege that McNeil or the other Defendants hired or promoted any of these employees instead of Plaintiff on the basis of some discriminatory criteria.

Plaintiff states that because of the treatment he received while he was a Traffic Supervisor, he requested and was granted a transfer to walking patrol in March 1995. Less than three weeks after Plaintiff's transfer, he was injured while responding to a breaking and entering call. Plaintiff states that although the injury left him able to perform only light-duty work, he was not offered the light-duty work that is commonly given to officers after recovering from an injury. Instead, Plaintiff states that he was placed on permanent midnight shift in the DPD records department. (Compl.¶ 18.) Plaintiff states that the DPD's failure to place him on a proper light-duty work assignment violated the policy of the City of Durham and the DPD which requires (1) that the DPD comply with medical orders that policemen be placed on light-duty work assignments with restricted activity, and (2) that the DPD provide desirable work accommodations through appropriate work assignments in such instances. Plaintiff alleges that because the DPD and the City of Durham violated these policies in his case, Plaintiff was forced to retire on disability.

In addition to the alleged discrimination that took place while Plaintiff was employed with the DPD, Plaintiff alleges that Defendant Ewell has continued to harass against Plaintiff since he left the DPD. Plaintiff, who has attempted to maintain a private investigative business, alleges that Ewell told one of Plaintiff's clients that Plaintiff was incompetent and that the client could have done better than to hire Plaintiff. Plaintiff states that as a consequence he lost his contract with that client. (Compl.¶ 28.)

Plaintiff contends that Defendant Powell is liable for McNeil's actions on a theory of negligent hiring. Plaintiff alleges that Powell hired McNeil even though Powell was aware of many instances of improper behavior by McNeil, including breaking and entering, assault, referring to white officers as Mark Furmans, and hiding a gun involved in a police shooting incident. Plaintiff further alleges that although Defendant Powell, as City Manager, was

aware of the discrimination and retaliation suffered by Plaintiff and was in a position to stop it, Defendant Powell ratified McNeil's actions by promoting McNeil to Chief of Police. (Compl.¶¶ 40–52.)

As a result of the alleged discrimination suffered by Plaintiff, Plaintiff has brought federal and state claims against Defendants. The federal claims are comprised of a claim for violation of 42 U.S.C. § 1983 and a claim for violation of 42 U.S.C. § 1981. The state claims are comprised of claims for wrongful termination, negligent hire, negligent retention, negligent supervision, negligent infliction of emotional distress, intentional infliction of emotional distress, tortious interference with contract, and tortious interference with future relations and/or prospective advantage.

Plaintiff filed his complaint against Defendants in the Superior Court of Durham County, North Carolina, on November 1, 1999.[2] Defendants City of Durham, Ewell, and Powell, pursuant to 28 U.S.C. § 1446(a), removed this action to this Court on December 30, 1999. Defendants have moved to dismiss all of Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that Plaintiff has failed to state a claim upon which relief can be granted. In the alternative, Defendants have submitted an affidavit and have moved for summary judgment as to each of Plaintiff's claims.

III. DISCUSSION

A. Standard for Motion to Dismiss

With respect to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dismissals are allowed only in very limited circumstances. *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.

1989). Generally, a court should not dismiss a complaint for failure to state a claim "unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied*, 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1956, 131 L.Ed.2d 849 (1995).

In the present case, as an alternative to Defendants' Motions to Dismiss pursuant to Rule 12(b)(6), Defendants move for summary judgment pursuant to Rule 56 as to Plaintiff's Complaint. When a court faced with a Rule 12(b)(6) motion elects to consider matters outside the pleadings, Rule 12(b) provides that "the motion be treated as one for summary judgment and disposed of as provided in Rule 56, and [that] all parties ... be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). In support of their summary judgment motions, Defendants have submitted the affidavit of Laura A. Henderson. However, the Court notes that Henderson's affidavit testimony pertains only to the issue of whether the City of Durham waived its governmental immunity by purchasing liability insurance or participating in local government risk pools. This issue is important only with respect to the Court's consideration of Plaintiff's state law claims, and is irrelevant with respect to Plaintiff's federal claims. Therefore, although the Court notes that Defendants move the Court to convert their

---

**2.** The Court notes that on November 1, 1999, Plaintiff filed an Application Extending Time to File Complaint, pursuant to Rule 3 of the North Carolina Rules of Civil Procedure, N.C.Gen.Stat. § 1A–1, Rule 3 (1999), in the Superior Court of Durham County, North Carolina. (Defs' Notice of Removal Ex. A.)

The application was granted and Plaintiff filed his complaint on November 22, 1999. Thus, although Plaintiff's complaint was actually filed over three years from the date of retirement from the DPD, Plaintiff's Complaint will be considered by this Court as filed in the state court on November 1, 1999.

Motions to Dismiss pursuant to 12(b)(6) to Motions for Summary Judgment as to both Plaintiff's federal and state claims, Defendants have not presented any matters outside of the pleadings for the Court to consider with respect to Plaintiff's federal claims. Consequently, because the Court will not consider any matters outside of the pleadings with respect to Plaintiff's federal claims, the Court cannot convert Defendants' Motions to Dismiss pursuant to 12(b)(6) to Motions for Summary Judgment in considering Plaintiff's federal claims.

In addition, as the Court will discuss herein, because the Court will grant Defendants' Motions to Dismiss as to each of Plaintiff's federal claims, the Court will not consider Defendants' Motions to Dismiss or Motions for Summary Judgment with respect to Plaintiff's remaining state law claims. Instead, pursuant to 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismiss the state law claims without prejudice.

### B. Claim for Violation of 42 U.S.C. § 1983

Defendants move to dismiss Plaintiff's § 1983 claim on the ground that Plaintiff, as an employee-at-will, cannot state a § 1983 claim because he has no protected property interest in continued employment or job reassignment and, as a result, no right to procedural due process. Plaintiff responds to Defendants' Motions to Dismiss Plaintiff's § 1983 claim by arguing that he not only had a "protected property interest," but also a "liberty interest" in continued employment and job reassignment. (Pl.'s Mem.Opp. Defs' Mot. Dismiss at 9, 14–15.)

Section 1983 provides in part:

§ 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

■ Section 1983 does not in itself create any substantive rights. Instead, it provides a statutory basis to receive a remedy for the deprivation of a right "secured by the Constitution and laws" of the United States by a person acting under color of state law. In order to state a cause of action under § 1983, a plaintiff must allege that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived him of some right, privilege, or immunity secured by a provision of the Constitution or a law of the United States. *See Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364, 1366 (4th Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989); *Burch v. Apalachee Community Mental Health Services, Inc.,* 840 F.2d 797, 800 (11th Cir.1988), *aff'd Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

■ Based upon Defendants' argument that dismissal is appropriate due to Plaintiff's lack of a property interest in employment, and Plaintiff's response that he does possess a property interest, the only possible constitutional basis of Plaintiff's § 1983 claim would be a purported violation of the Due Process Clause of the Fourteenth Amendment. However, the Court notes that Plaintiff's Complaint itself does not state any basis for Plaintiff's § 1983 claim. In other words, Plaintiff's Complaint does not identify any "right, privilege or immunity" secured by a provision of the Constitution or laws of the United States that has been violated. *Zombro,* 868 F.2d at 1366. Therefore, Plaintiff has failed to state a claim for violation of § 1983, and

the Court will grant Defendants' Motions to Dismiss as to this claim.

■ Notwithstanding Plaintiff's failure to allege that any of his rights under the Constitution or laws of the United States have been violated, the Court notes that Plaintiff's claim would also fail even if it is treated as a § 1983 claim for violation of the Due Process Clause of the Fourteenth Amendment. This is because in order to establish a § 1983 claim for violation of either substantive or procedural due process rights, a plaintiff must show that he possesses a protected property interest. *See Jenkins v. Weatherholtz,* 909 F.2d 105, 107 (4th Cir.1990) (holding that a plaintiff can only state a claim for violation of procedural due process where plaintiff has a legitimate property interest); *see also Sylvia Dev. Corp. v. Calvert County, Maryland,* 48 F.3d 810, 827 (4th Cir.1995) (holding that in order to make out a claim for violation of substantive due process, a plaintiff must show that he possesses a cognizable property interest). That property interest must rise to the level of a "legitimate claim of entitlement." *Biser v. Town of Bel Air,* 991 F.2d 100, 104, (4th Cir.) *cert. denied,* 510 U.S. 864, 114 S.Ct. 182, 126 L.Ed.2d 141 (1993) (*citing Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

■ In the present case, it is undisputed by the parties that Plaintiff is an at-will employee. The principles generally applicable when a discharged local government employee claims deprivation of a protectable property interest in continued employment are well-established. Property interests in continued employment are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Jenkins,* 909 F.2d at 107, (*citing Roth,* 408 U.S. at 577, , 92 S.Ct. 2701, 33 L.Ed.2d at 561). The existence of a property right to continued employment must be decided

under the applicable state law. *See Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684, 690 (1976). Under North Carolina law, an employee-at-will does not have a property right in continued employment. *See Evans v. Cowan,* 132 N.C.App. 1, 6, 510 S.E.2d 170, 174 (N.C.App.1999) ("An employee-at-will has no property interest by virtue of her employment, though an enforceable interest in continued employment may be created by [statute], or by an implied, contract."); *Wuchte v. McNeil,* 130 N.C.App. 738, 740, 505 S.E.2d 142, 144 (N.C.App.1998) ("An employee-at-will can be fired for an irrational reason, no reason, or any reason that does not violate public policy."); *Ware v. Fort,* 124 N.C.App. 613, 617, 478 S.E.2d 218, 221 (1996) (holding that no property interest exists in the employment-at-will context). However, Plaintiff contends that although he was an employee-at-will, he possessed a property interest in continued employment that was created by North Carolina public policy. Specifically, Plaintiff states:

> Plaintiff does not contend that any statute, ordinance or employment contract between him and Defendants establishes his property and liberty interests in continued employment. However, Plaintiff has established a property interest in his continued employment through his showing that his termination was for reasons which are against public policy. Although he was an "at-will" employee, which by itself does not create a protected property interest in continued employment, Plaintiff did have a property interest in being able to continue his employment and not be terminated for an unlawful reason, as is alleged.

(Pl's Mem.Opp. Defs' Mot. Dismiss at 14.)

■ North Carolina law does indeed recognize an exception to employment-at-will status where an employee is discharged in contravention of North Carolina public policy. *Coman v. Thomas Mfg. Co.,* 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989). However, the fact that the public policy exception creates a right of action in

certain limited circumstances does not, by itself, mean that employees discharged for reasons that violate public policy are given a property right in their employment. The Court does not find—and Plaintiff does not cite—any authority under North Carolina law that stands for the proposition that North Carolina public policy creates property rights in employment. In the absence of such authority, the Court will not expand upon the meaning of the public policy exception to employment-at-will status under North Carolina law. Therefore, because Plaintiff had no property interest in continued employment or job reassignment with the DPD, the Court finds that Plaintiff has failed to state a § 1983 claim against Defendants for violation of substantive or procedural due process rights. Accordingly, although the Court will dismiss Plaintiff's § 1983 claim for failure to identify the violation of any legal rights, the Court also notes that Plaintiff's § 1983 claim would also fail if it were based upon an alleged violation of substantive or procedural due process rights.

### C. Claim for Violation of 42 U.S.C § 1981

■ As stated earlier, Plaintiff has also brought a claim against Defendants for violation of 42 U.S.C. § 1981. Specifically, Plaintiff's claim is directed toward the City of Durham and Defendant McNeil. (Compl.¶¶ 64–70.) [3] Plaintiff's Complaint states that his § 1981 claim arises from Defendants' refusal to grant Plaintiff a reassignment to light-duty work following his injury. Plaintiff alleges that Defendant McNeil's behavior, including making com-

ments about Jews and condoning similar behavior by other officers demonstrates that racial animus was the motivation for this decision.

Defendants argue that Plaintiff's Section 1981 claim should be dismissed on three grounds. First, Defendants argue that Plaintiff's § 1981 claim should be dismissed because the claim is time barred. Second, Defendants argue that Plaintiff's § 1981 claim should be dismissed because Plaintiff has failed to allege that his discrimination was caused by a municipal policy or custom that discriminates against Jews. Third, Defendants argue that Plaintiff's § 1981 claim should be dismissed because Plaintiff has failed to allege the essential elements of any claim for race discrimination in violation of § 1981. The Court will address each of these arguments in turn.

### 1. Time Bar on Section 1981 Claims

Section 1981 provides:

§ 1981. Equal rights under the law

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

Where a plaintiff brings a claim against a municipal employee in his official capacity, the claim is regarded as being brought against the municipality. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244, n. 8 (4th Cir.1999) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114, 121 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent....") (internal quotation marks omitted)).

---

**3.** Of the defendants in this action, Plaintiff's Complaint only attributes the conduct constituting a violation of § 1981 to Defendant McNeil. Plaintiff does not allege that Defendants Powell or Ewell were involved in the racial harassment or the personnel actions that Plaintiff now contends violated § 1981. (Compl.¶ 164–70.) However, the Court will interpret Plaintiff's Complaint as alleging a § 1981 claim against the City of Durham because Plaintiff has named McNeil as a defendant in his individual and official capacity.

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

As stated earlier, Defendants first argue that Plaintiff's claim is time barred under North Carolina's statute of limitations. Defendants argue that Plaintiff cannot establish an act of discrimination that occurred within the three-year period preceding the date Plaintiff's complaint was filed. Defendants point to Plaintiff's allegations that Defendant McNeil began to harass Plaintiff in 1989 and that harassment intensified because of the incidents relating to Defendant McNeil's alleged obstruction of Plaintiff's investigations in 1994 and 1995. Plaintiff argues that he was deprived of his rights with respect to his employment as a police officer for the City of Durham at the time he alleges he was forced to retire on October 31, 1996. Plaintiff argues that the statute of limitations period began to accrue on that date. Thus, Plaintiff argues that his complaint was timely filed on November 1, 1999.

 North Carolina's three-year statute of limitations for personal injury actions governs the Section 1981 claim. *See Kornegay v. Burlington Industries, Inc.* 803 F.2d 787, 788 (4th Cir.1986); *Reagan v. Hampton,* 700 F.Supp. 850, 855 (M.D.N.C. 1988). The question then is whether any of Plaintiff's race discrimination claims based upon § 1981 accrued within the three-year period of the statute of limitations. Although the appropriate statute of limitations for federal civil rights actions is borrowed from state law, "the time of accrual of a civil rights action is a question of federal law." *National Advertising Co. v. City of Raleigh,* 947 F.2d 1158, 1162 (4th Cir.1991) *cert. denied* 504 U.S. 931, 112 S.Ct. 1997, 118 L.Ed.2d 593 (1992). "Federal law holds that the time of accrual is when plaintiff knows or has reason to know the injury which is the basis of the action." *Id.*

 As stated earlier, Plaintiff's Section 1981 cause of action stems from the allegation that he was refused a reassignment to light-duty work upon his return from being injured. (Compl.¶¶ 64–70.) Plaintiff's alleged denial of a light-duty work reassignment took place upon his return to duty at the DPD. It is unclear from the complaint or parties' briefs exactly when Plaintiff's return to duty took place. However, it appears that Plaintiff was refused the reassignment at some point after Plaintiff's March 1995 injury and prior to Plaintiff's retirement from the DPD on October 31, 1996. When Plaintiff was refused the light-duty reassignment, it was at that point that the statute of limitations time period on his § 1981 lawsuit began to accrue because at that time Plaintiff knew or had reason to know that the refusal of the proper reassignment violated his rights. *See National Advertising Co.,* 947 F.2d at 1162. Thus, looking prospectively from the time Plaintiff was refused the light-duty reassignment, somewhere between March 1995 and prior to October 31, 1996, the Court observes that Plaintiff subsequently filed his § 1981 action on November 1, 1999. From this, it appears that Plaintiff's filing was more than three years after the alleged denial of the light-duty reassignment. Since Plaintiff's filing of his § 1981 complaint took place more than three years after the refusal of the light-duty reassignment took place, the Court finds that Plaintiff's § 1981 complaint is time barred.

Even if the court were to look retrospectively from the date that Plaintiff filed his complaint, November 1, 1999, the Court notes that Plaintiff would have to allege an event that took place within the three

years prior to his filing of his complaint to prevent his claim from being time barred. However, Plaintiff has not alleged any event in his Complaint that took place within the three-year period from October 31, 1996 to November 1, 1999 which supports his Section 1981 claim. As previously noted, Plaintiff's denial of his light-duty work assignment took place at some point prior to his retirement on October 31, 1996. Thus, the refusal of the light-duty assignment took place outside of the three years prior to Plaintiff's filing of his complaint. Based on this, the Court finds that Plaintiff has not pointed to any event which occurred within the three years immediately preceding the filing of his § 1981 complaint. Therefore, since Plaintiff filed his § 1981 action outside of the three-year statute of limitations period related to the denial of the light-duty reassignment the Court finds that Plaintiff's § 1981 claim is time barred.

### 2. Municipal Policy or Custom to Discriminate against Jews

■ Although the Court finds that Plaintiff's claim is time barred, the Court will nevertheless address Defendants second contention, that Plaintiff's Section 1981 claim should be dismissed as to Defendant City of Durham because Plaintiff has failed to allege that his discrimination was caused by a municipal policy or custom that discriminates against Jews. The Supreme Court has held that in cases where a plaintiff seeks to state a claim for violation of rights under § 1981 against a municipality, the same rules with respect to municipal liability apply as are applied under a claim for violation of § 1983. *See Jett v. Dallas Independent School District,* 491 U.S. 701, 733, 109 S.Ct. 2702, 105 L.Ed.2d 598; 625 (1989) ("[T]he express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units...."); *Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro,* 64 F.3d 962, 965, n. 3 (4th Cir.1995) ("the same principles of municipal liability apply to § 1981 and § 1983 actions....") This means a municipality cannot be held liable under a theory of respondeat superior for its employees' violations of § 1981. Instead, municipal liability for violation of § 1981 must be based on acts of the municipality. *Id.,* 64 F.3d at 965. Therefore, a plaintiff who seeks to bring a § 1981 claim against a city must allege that he suffered discrimination that was caused by an official policy or custom of the municipality, or that the alleged discrimination resulted from the actions of an official having express or implied authority from the City, as its "policymaker" in matters of personnel management. *Id.,* at 966; *See also Crowley v. Prince George's County, Md.,* 890 F.2d 683, 685 (4th Cir. 1989); *cert. denied* 506 U.S. 833, 113 S.Ct. 101, 121 L.Ed.2d 61 (1992).

■ In the present case, Defendants correctly point out that Plaintiff has not alleged that the discrimination he suffered was caused by an official policy or custom of the City of Durham with respect to Jews.[4] However, the Court observes that Plaintiff has alleged that his discrimination was caused by acts of Defendant McNeil, then Chief of the DPD, and Defendant Powell, then Durham City Manager. Plaintiff alleges that both McNeil and Powell are official policymakers for purposes of Plaintiff's cause of action. (Compl. ¶¶ 60–62, 65.) This allegation is contrary to Defendants' argument that failure to identify an official policy as the source of discrimination makes Plaintiff's claim unsustainable, because Plaintiff has apparently alleged that the discrimination he suffered resulted from the actions of officials having express or implied authority from the City

---

**4.** The Supreme Court has held that a Jewish person can state a race discrimination claim under § 1981. *See Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 610–613, 107 S.Ct. 2022, 95 L.Ed.2d 582, (1987); *Shaare Tefila Congregation v. Cobb,* 481 U.S. 615, 617–618, 107 S.Ct. 2019, 95 L.Ed.2d 594, 597 (1987).

of Durham. *Greensboro Professional Fire Fighters Ass'n,* 64 F.3d at 966. Notwithstanding this showing, the Court observes that if Plaintiff could show that he suffered discrimination in violation of § 1981 that resulted from the actions of Defendants McNeil or Powell as official policymakers within the statute of limitations time period, he could properly state a § 1981 claim against the City of Durham. However, as discussed above, fatal to Plaintiff's claim is the fact that Plaintiff has not alleged any discriminatory actions taken by Defendants McNeil or Powell in relation to his § 1981 claim which took place within the statute of limitations period preceding the filing of his claim against the City of Durham. Therefore, the Court finds that even if Plaintiff has apparently alleged that Defendants McNeil and Powell are official policymakers for § 1981 purposes, his § 1981 would still be time barred without a showing of discriminatory acts within the appropriate three-year statute of limitations period.

### 3. Section 1981 Claim as Related to the Failure to Reassign

Plaintiff's Section 1981 claim as actually alleged in the Complaint is based upon Defendants' refusal to reassign Plaintiff to light-duty work following Plaintiff's injury on the job. (Compl.¶¶ 64–70.) Defendants move to dismiss Plaintiff's § 1981 claim as to both the City of Durham and Defendant McNeil on the ground that Plaintiff has failed to state the essential elements of any theory of discrimination available under § 1981. In support of the § 1981 claim, Plaintiff states the following: (1) that the City of Durham had a clear policy regarding the assignment of injured and incapacitated officers to light-duty work; (2) that the DPD followed these policies in dealing with other officers who returned to work after hip replacements and heart problems; and (3) that the DPD did not follow these policies in Plaintiff's case because he is Jewish. (Compl.¶¶ 66, 68–70.)

The prima facie elements of a claim of race discrimination are the same under § 1981 as they are under Title VII. *See Gairola v. Com. of Va. Dept. of General Services,* 753 F.2d 1281, 1285 (4th Cir. 1985) (holding that under Title VII and § 1981, the elements of the required *prima facie* case are the same.) Therefore, in order for Plaintiff to state a claim for race discrimination based upon Defendants' refusal to reassign him to light-duty work after his injury, Plaintiff would have to allege that: (1) he is a member of a protected group (2) he applied for the reassignment to light-duty work; (3) his condition made him eligible for reassignment to light-duty work; and (4) he was denied reassignment to light-duty work though similarly situated employees outside the protected group were given a reassignment to light-duty work under circumstances giving rise to an inference of unlawful discrimination. *Alvarado v. Board of Trustees of Montgomery Community College,* 928 F.2d 118, 121 (4th Cir.1991). In his complaint, Plaintiff alleges the first three elements of the prima facie case by stating that he is Jewish, that he was injured and entitled to a light-duty reassignment, and that he applied for a light-duty reassignment. (Compl. ¶¶ 65, 68.) Plaintiff apparently seeks to articulate the fourth element of his § 1981 claim by stating that other employees were granted reassignments to light-duty work following medical problems while he was not granted an appropriate reassignment. Specifically, Plaintiff points to three officers, Sergeant Mayfield, Corporal Merritt, and Sergeant Price, who suffered health conditions such as heart problems and hip replacements and then were offered appropriate reassignments upon their return to the DPD. (Compl.¶ 69, 70.) However, Plaintiff fails to allege that any of these three employees were outside of Plaintiff's protected group so as to raise an inference that Plaintiff's failure to obtain a reassignment was solely based on his being Jewish. Because of this omission, Plaintiff has failed to allege circumstances which give

rise to an inference of unlawful discrimination. Thus, the Court finds that Plaintiff has failed to state an essential element of a claim for race discrimination in violation of § 1981.

As an additional matter, the Court notes that Plaintiff attempts to create claims for retaliation and constructive discharge in his Response to Defendants' Motions to Dismiss. (Pl.'s Mem.Opp. Defs' Mot. Dismiss at 19–21.) However, Plaintiff's Complaint does not set out any allegations of retaliation and constructive discharge in violation of § 1981. (Compl.¶¶ 64–70.) Because the Court's consideration of Defendants' Motions to Dismiss is limited to the allegations stated in the Complaint, Plaintiff cannot attempt to create claims for retaliation and constructive discharge in his response to Defendants' Motions to Dismiss. *See Randall,* 30 F.3d at 522 (holding that in considering a motion to dismiss, a district court must consider "the legal sufficiency of the *complaint*") (emphasis added). Therefore, the Court will not consider Plaintiff's reference to claims for retaliation and constructive discharge in his responsive brief.

In summary, the Court finds that Plaintiff's Section 1981 claim is time barred. Even if Plaintiff's § 1981 claim was not time barred, the Court notes that the claim would fail for failure to allege, in any respects, facts that would give rise to an inference of unlawful discrimination on the basis of race. Therefore, the Court will grant Defendants' Motions to Dismiss as to Plaintiff's § 1981 claim.

### D. State Law Claims

Given that the Court will dismiss each of Plaintiff's federal claims, it is appropriate to dismiss the remaining state law claims pursuant to 28 U.S.C. § 1367. Section 1367 provides in relevant part.

§ 1367 Supplemental jurisdiction

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

. . . . .

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

. . . . .

(3) the district court has dismissed all claims over which it has original jurisdiction . . .

28 U.S.C. § 1367.

Pursuant to 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, the Court dismisses Plaintiff's state law claims without prejudice.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss, [Document # 2] and [Document # 6], are GRANTED as to Plaintiff's claims for violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1981. Furthermore, because the Court will grant Defendants' Motions to Dismiss as to Plaintiff's federal claims, the Court will not consider Defendants' Motions to Dismiss as to Plaintiff's remaining state law claims. Instead, pursuant to 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims, and dismiss the state law claims without prejudice.

An Order and Judgment consistent with this *MEMORANDUM OPINION* will be filed contemporaneously herewith.